OPINION OF THE COURT
Ethan Greenberg, J.
A defendant is arrested for driving while intoxicated. He is not given Miranda warnings. He is given inadequate “refusal” warnings in connection with a request by the police that defendant consent to submit to a chemical “breathalyzer” test for the presence of alcohol in his system. Defendant (who is being videotaped) answers the inadequate refusal warnings by making several nonresponsive but incriminatory remarks in what appears to be a mildly drunken fashion. All concerned agree that evidence of the defendant’s refusal to take the chemical test is barred at trial by Vehicle and Traffic Law § 1194 (2) (f) because of the inadequate refusal warnings. The open question presented is this: Can the People nevertheless properly present select portions of the videotape at trial in order to prove defendant’s intoxication, provided that the videotape is redacted so as to eliminate those passages that indicate that *514 defendant was asked and refused to submit to the chemical test? Or would the presentation of the redacted videotape at trial violate either (1) the statutory bar against evidence of refusal established by Vehicle and Traffic Law § 1194 (2) (f), or (2) defendant’s right against self-incrimination?
This question is presented by the case of Rafael Robles and it appears to be a question of first impression. Much like the issue presented in the recent case of People v Berg (92 NY2d 701, 702 [1999]), the question presented here “centers on the intersection of two important interests: the prosecution of drunk drivers, and the constitutional privilege against self-incrimination.” For the reasons set forth herein, this court finds that the People may present a properly redacted version of the videotape at trial.
I. the Statutory scheme
It is now well settled that where a defendant has been properly arrested based on probable cause for the crime of driving while intoxicated, the police may ask the defendant to consent to submit to a chemical test for the presence of alcohol in the defendant’s system, and the defendant has no constitutional right to refuse. This is so because a chemical test does not require defendant to provide evidence of a testimonial or communicative character and therefore does not implicate defendant’s right against self-incrimination. (See, Schmerber v California, 384 US 757 [1966]; People v Thomas, 46 NY2d 100 [1978], appeal dismissed 444 US 891 [1979]; People v Rosario, 136 Misc 2d 445 [Crim Ct, Bronx County 1987].)
New York’s Vehicle and Traffic Law sets up a statutory scheme whereby a defendant who has been arrested for driving while intoxicated will not be forced to take a chemical test for alcohol but will face certain adverse consequences if he refuses to take such a test. Section 1194 (2) (b) of the Vehicle and Traffic Law requires in substance that a defendant who has been arrested on a charge of drunken driving shall be advised that his (or her) driver’s license will be suspended for refusal to take a chemical test whether or not the defendant is subsequently found guilty of the criminal charge. If the defendant nevertheless refuses to take the chemical test, section 1194 provides that the test shall not be given but that the police shall immediately prepare a written report of the defendant’s refusal. Upon arraignment on the criminal charge of driving while intoxicated, the defendant’s license will be suspended by the court pending further administrative proceedings regard *515 ing the suspension before the Department of Motor Vehicles. (See generally, Gerstenzang, Handling the DWI Case in New York § 41.1 [1998-1999 ed].)
Section 1194 (2) (f) of the Vehicle and Traffic Law further provides that evidence of the defendant’s refusal to submit to a chemical test shall be admissible at the defendant’s trial on the criminal charge of driving while intoxicated, but only upon a showing by the People that the defendant persisted in refusing to take the test after being given sufficient warning in clear and unequivocal language[1] of the effect of such refusal. Specifically, section 1194 (2) (f) provides: “Evidence of a refusal to submit to such chemical test or any portion thereof shall be admissible in any trial, proceeding or hearing based upon a violation of the provisions of section eleven hundred ninety-two of this article but only upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal.”
The Vehicle and Traffic Law permits evidence of defendant’s refusal to be admitted at trial on the theory that such a refusal evinces the defendant’s consciousness of guilt. (See, People v Ferrara, 158 Misc 2d 671 [Crim Ct, Richmond County 1993].) It has become common practice for defendants to request and for the courts to conduct pretrial hearings on the issue of the admissibility of a defendant’s refusal to consent to a chemical test. (See, People v Cruz, 134 Misc 2d 115 [Crim Ct, NY County 1986] [defendant entitled to pretrial hearing regarding admissibility of test refusal].) At such a hearing, pursuant to Vehicle and Traffic Law § 1194 (2) (f), the People must show that proper “refusal” warnings — warnings that advise the defendant of the *516 adverse consequences that will follow a refusal to take the chemical test — were given and that defendant then refused to take the test. These hearings have presented a variety of issues, such as whether complete warnings were given (see, e.g., People v Pagan, 165 Misc 2d 255 [Crim Ct, Queens County 1995]), and whether the translation of the warnings for a non-English-speaking defendant was adequate (see, e.g., People v Niedzwiecki, 127 Misc 2d 919 [Crim Ct, Queens County 1985]). Where the People do not prove that sufficient warnings were given, evidence of defendant’s refusal is not permitted at trial. (See, e.g., People v Boone, 71 AD2d 859 [2d Dept 1979].)
II. FACTUAL AND PROCEDURAL BACKGROUND
Defendant Rafael Robles was arrested on or about January 14, 1998 and was charged with violations of Penal Law § 230.03 (patronizing a prostitute, a misdemeanor) and Vehicle and Traffic Law § 1192 (3) (operating a motor vehicle while under the influence of alcohol, also a misdemeanor).
Defendant refused to submit to a chemical test and upon arraignment his license was duly suspended. Defendant moved by notice of motion dated April 6, 1998 for an order suppressing any statements made by the defendant and any evidence of his refiisal. A hearing was ordered. The hearing was conducted before this court on October 27 and 28 of 1998. At the outset of the hearing the specific nature of defendant’s application was clarified. Defendant moved on two grounds to suppress evidence of the statements that were made by him on videotape at the time he was given refusal warnings. First, defendant asserted that he was arrested without probable cause and that his videotaped statements should therefore be suppressed as the fruit of his illegal arrest pursuant to Dunaway v New York (442 US 200 [1979]) and its progeny. Second, defendant asserted that the same videotaped statements should also be suppressed pursuant to Vehicle and Traffic Law § 1194 (2) (f) as evidence of a refusal to consent to a chemical test that was made only after inadequate refusal warnings were given.
Defendant’s Arrest
At the hearing the People presented the testimony of one witness, the arresting officer Police Officer Joseph Rosenberger, together with a videotape of the defendant described below. Defendant presented no evidence. The arresting officer’s testimony showed that shortly after midnight on January 14, 1998 the defendant drove his car onto the “set” of an undercover *517 police prostitution operation (known as “Operation Losing Prostitution”) located near East 242nd Street and White Plains Road in the Bronx. Defendant approached a female undercover officer who was posing as a prostitute and offered to pay her $20 in return for a sex act. The undercover officer communicated to other police officers by prearranged signal that an offer had been made, and the other officers moved in and stopped the defendant within a few seconds after the defendant’s offer. Officer Rosenberg approached defendant who was still seated in the driver’s seat of his car. The car’s engine was still running. Officer Rosenberg conferred briefly by walkietalkie with the undercover officer who confirmed that defendant had offered her money for sex. The defendant smelled strongly of alcohol and appeared to be very intoxicated in that his eyes were bloodshot and he was “swaying” and “babbling”. Officer Rosenberg asked the defendant to step out of his car. When the car door opened, defendant fell face first into the street and had to be pulled to his feet by the police. A preliminary field test (the results of which are not admissible at trial) was administered and defendant’s blood alcohol content was measured at .15 of 1%. (Blood alcohol content of .10 of 1% or greater is presumptive evidence of intoxication.) Defendant was arrested for the crimes of patronizing a prostitute and driving while intoxicated and taken to a police station known as Highway One. The police did not read defendant his Miranda rights at this time or at any subsequent time.
The police attempted to give defendant his refusal warnings at Highway One. This procedure was videotaped. Defendant speaks Spanish. Accordingly, the police officers properly decided to give defendant refusal warnings in Spanish. The police had a prerecorded videotape of a woman delivering refusal warnings in Spanish on hand at Highway One for this purpose. The defendant was videotaped as he stood side-by-side with Officer Rosenberg and another officer and watched the Spanish language videotape version of the refusal warnings being played on a television set at Highway One. The room was arranged in such a way that when a viewer (such as a juror in this case when it comes to trial) watches the videotape of the defendant it is not apparent that defendant is looking at a television set or where the offscreen woman’s voice delivering the refusal warnings in Spanish is coming from.
The Videotape
The videotape of the defendant begins with a police officer identifying the defendant and setting out other identifying in *518 formation concerning the arrest. The prerecorded Spanish language videotape is then played for the defendant. The taped woman’s voice says to the defendant (in Spanish): ‘You have been arrested for driving under the influence of alcohol or drugs. I would like you to have a chemical test of your breath. Do you want to take the test, yes or no?”
Defendant then responds to this prerecorded Spanish language refusal warning by making a series of remarks that were not directly responsive to the question whether or not he would consent to the chemical test. First, defendant asserts (in what appears to be a mildly drunken fashion) that this is the first time he has gotten drunk and that everyone gets drunk at Christmastime. The defendant then exclaims with considerable enthusiasm that the woman (that is, the woman in the prerecorded Spanish language videotape) is very pretty. Defendant then grows increasingly difficult to understand, muttering that he is becoming “crazy” and “nervous” and asserting “It does not matter if they give me money. Don’t be funny.”
The police then replay the same prerecorded Spanish language videotape and the offscreen woman’s voice repeats the same refusal warning in Spanish. Defendant responds in a manner that is difficult to understand: ‘Yes or no? Was I steal * * * passing the light or I was in bad things * * * [inaudible words] speeding? Was I driving ‘basado’? No * * * or I was parked. Yes or no? I was parked, eh? I wasn’t driving with a gun on me and you arrested me and I wasn’t [inaudible words] you say un, uh uh uh uh uh uh, no way, I was parked in the parking”.
At this point, the police — apparently despairing of eliciting a sensible response from the defendant — ceased their efforts to give refusal warnings and ended the videotape process. As a result the police officers never gave the defendant the complete refusal warnings which would have advised defendant of the consequences of his refusal, including the fact that a refusal could be used as evidence against him at trial.
The People’s Proposal
At the conclusion of the combined Dunaway!refusal hearing in this case, the court issued an oral decision from the Bench (1) indicating that defendant’s Dunaway motion would be denied unless defendant could point to persuasive authority *519 leading to a different conclusion,[2] and (2) finding the defendant had not been given complete refusal warnings.
During oral argument at the conclusion of the hearing, the People properly conceded that defendant had not been given any Miranda warnings and had not been given adequate refusal warnings. The People further properly conceded that evidence of defendant’s refusal could not be presented to the jury at trial. However the People did argue that they should be permitted to introduce into evidence at trial a redacted version of the videotape made of the defendant at Highway One at the time the inadequate refusal warnings were given. Specifically, the People proposed that those passages of the videotape in which defendant was given partial refusal warnings and refused to take the chemical test would be eliminated, but that the other remaining passages would be admitted into evidence before the jury in order to show the defendant’s condition and appearance close to the time of his arrest. The court directed the People to submit a videotape redacted in the form proposed by the People. The court further directed the parties to submit legal memoranda on the issue of whether any portion of the defendant’s videotaped statements should be admitted into evidence at trial notwithstanding the fact that the defendant was given inadequate refusal warnings.
III. ANALYSIS
A. Evidence of Refusal
The court has now reviewed the redacted videotape that the People propose to present at trial.[3] Even a brief review of the People’s proposal leads one to doubt the People’s assertion *520 that they seek to introduce this evidence solely in order to provide the jury with a visual record of the defendant’s appearance and condition. Defendant’s videotaped statements are plainly incriminatory in that defendant repeatedly admits that he was drunk and concedes that he was in a car. Moreover, although defendant in his videotaped statements denies that he was driving a car at the moment he was arrested by the police, he does so in a manner that at least strongly suggests that he was indeed driving his car immediately beforehand. Thus it would certainly appear that the People want to introduce the redacted videotape both because it provides a visual record of defendant’s condition and because it contains extremely damaging admissions by the defendant.
The People do not point to any reported decision where inadequate refusal warnings were given and yet some portion of the videotape of the refusal warning-and-response process was nevertheless admitted into evidence for the limited purpose of demonstrating defendant’s condition. There do not appear to be any reported decisions where this has been permitted; on the other hand, there do not appear to be any reported decisions where this was forbidden either.[4]
Defendant responds to the People’s proposal by arguing that Vehicle and Traffic Law § 1194 (2) (f) mandates that defendant’s refusal cannot be received into evidence at trial, that the entire *521 videotape here is part-and-parcel of defendant’s refusal, and that as a consequence no part of the videotape should be received into evidence at trial. Defendant also argues that partial redaction of the tape will lead to improper speculation by the jury as to what has been deleted and why, and that no limiting instruction can be truly adequate under these circumstances.
Defendant’s argument in some sense begs the central question presented here. Defendant and the People agree that evidence of defendant’s refusal cannot be received into evidence. But are the select portions of the videotape which the People seek to introduce at trial truly evidence of defendant’s refusal? Or can those same select portions of videotape instead fairly be characterized as probative evidence that is properly limited to the issue of whether the defendant was indeed intoxicated?
Upon analysis, the People have the better end of the argument. The redacted videotape is clearly extremely probative on the issue of intoxication. The tape will allow the jury to judge for itself — rather than relying on the testimony of police witnesses given more than a year after the fact — whether the defendant appeared and sounded drunk shortly after his arrest. And the videotape in its redacted form does not give any indication either that defendant was asked to take a chemical test or that he refused to take such a test. (Moreover — although there is, of necessity, no evidence before the court either way on this point — it does not appear that the general public knows enough about police procedures in drunk-driving cases that jurors will somehow intuit from the mere fact that a videotape was made that defendant was asked and refused to take a chemical test.)
Defendant is right to raise the concern that, because it is obvious that the videotape has been redacted, the jury may speculate as to what has been deleted from the tape. However, there is no good reason to doubt that an appropriate limiting instruction can be fashioned to meet this concern. (In addition, it should be noted that as a technical matter the redacted video is very “choppy” because of the many edits made. This gives undue emphasis to the fact that certain material has been deleted. The court therefore requests, but does not direct, that the People do whatever is possible as a mechanical matter to smooth out the redacted videotape so that the edits are not quite so jarring.)
Accordingly, the court finds that the People may present the redacted videotape as evidence at trial without violating Vehi *522 ele and Traffic Law § 1194 (2) (f)’s bar against evidence of a refusal.[5]
B. Self-Incrimination
Separate and apart from the question which of the defendant’s statements made on videotape should be barred because they constitute evidence of defendant’s refusal to take the chemical test, this case also presents a distinct question as to whether evidence of defendant’s videotaped statements should be barred on the ground that his right against self-incrimination was violated.
A statement made by a defendant to the police before the commencement of a criminal proceeding may be used by the prosecution at trial so long as it was made voluntarily. A statement will be regarded as involuntarily made where it is obtained through force or through other means that violate defendant’s constitutional right against self-incrimination. (CPL 60.45.) Where the defendant’s statements are the product of “custodial interrogation” and the defendant is not advised of what are now commonly known as defendant’s Miranda rights (see, Miranda v Arizona, 384 US 436 [1966]), evidence of those statements will be suppressed as involuntarily made.
Here there is no question that defendant was in police custody at the time he made the statements recorded on the videotape and that defendant was never given Miranda warnings. It is also clear from the videotape itself that defendant was asked a question by the police. Specifically (as already described above), after first being advised that he was under arrest for driving while intoxicated, defendant was asked whether he would agree to take the chemical test for alcohol. Thus it can plausibly be argued by the defendant that all of defendant’s videotaped statements should be suppressed *523 because they are the product of custodial interrogation undertaken without Miranda warnings.[6]
Certainly it would be a wise practice for the police to routinely give Miranda warnings to all defendants and particularly to those defendants who are about to be asked to consent to a chemical test for alcohol. If the police adopted such a practice, then there could not be any question on this score about the admissibility of the defendant’s statements at a subsequent trial.
The court nevertheless concludes that, even though no Miranda warnings were given in this case, the redacted videotape may be played for the jury at trial without violating defendant’s right against self-incrimination. The court so finds because defendant’s statements in this case were not the product of “interrogation” as that term is used in the context of a citizen’s Fifth Amendment right against self-incrimination.
The concept of “interrogation” for Fifth Amendment purposes is not as simple as it might seem. On the one hand, “interrogation” is not limited to the traditional situation where a policeman asks a defendant direct questions about a crime that the police suspect the defendant may have committed. Rather “interrogation” embraces any comment or conduct by the police that is reasonably likely to elicit an incriminating response from the defendant. (See, Rhode Island v Innis, 446 US 291 [1980]; People v Ferro, 63 NY2d 316 [1984], cert denied 472 US 1007 [1985]; People v Rodney, 85 NY2d 289, 293 [1995].) Where a defendant who has not been given Miranda warnings makes statements that are the result of police inducement, provocation, encouragement or acquiescence, no matter how subtly employed, those statements will be regarded as the product of “interrogation.” (See, People v Velasquez, 68 NY2d 533, 538 [1986]; People v Stoesser, 53 NY2d 648, 651 [1981].)
On the other hand, not every situation where the police ask a question and the defendant then makes a statement is regarded as “interrogation.” (See, People v Vasquez, 198 AD2d *524 460 [2d Dept 1993], lv denied 82 NY2d 932 [1994].) Thus, for example, in the recent case of People v Webb (224 AD2d 464 [2d Dept], lv denied 88 NY2d 943 [1996]), the police had been looking for several weeks for two men who had committed a robbery during which, among other things, a television was stolen. After cornering Webb in an abandoned garage, one of the policemen asked Webb where he had been hiding. Webb responded, “You got me, but you’re not going to get my partner or the TV.” The Appellate Division held that Webb’s statement was not the product of “interrogation” because the police officer could not reasonably have anticipated that his question about Webb’s whereabouts would elicit a self-incriminatory response from Webb. Similarly, and more to the point for present purposes, there is a long line of cases which hold that where the police ask a defendant noninvestigatory questions solely for administrative “booking” purposes and the defendant then makes incriminatory statements, the defendant’s statements will not be regarded as the product of “interrogation.” (See, People v Rodney, supra; see also, Pennsylvania v Muniz, 496 US 582 [1990].)
It is this line of cases which carve out an exception to the Miranda rule for administrative noninvestigatory questions about “pedigree” information that is most closely analogous to the case before the court. As the Court of Appeals explained in Rodney, the reason for the pedigree exception “derives from the essential purpose of Miranda — to protect defendants from self-incrimination in response to questions posed as part of the investigation of a crime, as distinguished from noninvestigative inquiries.” (People v Rodney, 85 NY2d, supra, at 292.) Much like a defendant who is asked pedigree questions, the defendant in this case was plainly asked a question, namely, whether he would consent to a chemical test. But — much like a question about pedigree information — the purpose of that question was not to elicit verbal information from the defendant about a crime in order to further a police investigation into the defendant’s conduct. Rather, the evident purpose of the question was simply to comply with the statutory requirements set up by the Vehicle and Traffic Law that a defendant must be asked to consent to a chemical test and must be given clear and unequivocal “refusal” warnings.
To put the same point somewhat differently, the standardized refusal warnings are of course designed to elicit a response from the defendant — namely, either an informed consent or an informed refusal to take the chemical test. But they are not *525 designed to elicit damaging admissions by the defendant about his case. Here the police did not intend and could not reasonably have expected that the question “Do you want to take the test, yes or no?” would evoke a self-incriminatory response from the defendant. Accordingly, there was no “interrogation” and defendant’s right against self-incrimination was not violated. (See, Pennsylvania v Muniz, 496 US, at 605-606 [officer’s inquiries in connection with request to submit to breathalyzer test pursuant to Pennsylvania’s Implied Consent Law were necessarily attendant to legitimate police procedure and did not constitute interrogation].)
In point of fact, most defendants respond to the refusal warnings by answering the narrow question posed: Do you consent to take the chemical test? Here defendant — perhaps because he was intoxicated, or perhaps simply because he is an independent spirit — did not feel bound to answer only the narrow question that was asked. Rather it appears that defendant instead focused on the prefatory language in the refusal warning that advised him that he was under arrest for driving while intoxicated, and it further appears that defendant therefore decided to assert his defenses to that charge in his own fashion. Indeed, in a somewhat scattered manner, defendant quickly rattled off a number of responses to the charge of drunken driving for the benefit of the police at Highway One, all of which are in substance quite familiar to any practitioner of criminal law. Specifically, defendant: (1) offered up a factual defense of sorts (“I was parked”); (2) asked for mercy based on his good record (“It’s the first time I got drunk”); (3) offered an excuse by way of mitigation (“We are in Christmas”); (4) complained of selective prosecution (“Everybody gets drunk, we are in Christmas”); and (5) suggested that his offense was not truly criminal in nature, particularly when compared with other more serious crimes (“I wasn’t driving with a gun on me.”).
Thus it appears that defendant made the statements at issue in this case because he was advised by the Spanish language prerecorded refusal warning that he was under arrest for driving while intoxicated. Where a defendant makes statements in response to being advised of the charges against him, there is no “interrogation” and no violation of his Fifth Amendment rights. (See, People v Pryor, 194 AD2d 749 [2d Dept 1993], lv denied 82 NY2d 724 [1993] [upon being advised that he was arrested for DWI defendant volunteered, “I am not drunk, I only had a couple of beers;” held: statement admis *526 sible because there was no interrogation in that the officer had no reason to believe that his statement of the arrest charges would elicit an incriminating response from defendant]; see generally, People v Lynes, 49 NY2d 286 [1980]; People v West, 237 AD2d 315 [2d Dept], lv denied 90 NY2d 899 [1997]; People v Hylton, 198 AD2d 301 [2d Dept 1993], lv denied 82 NY2d 925 [1994] [“There is no evidence in the record that the arresting officer should have known that her statement to the defendant advising him of the reason for his arrest * * * was reasonably likely to evoke an incriminating response.”].)
Accordingly, the court finds that the partial refusal warning that was given to defendant did not constitute interrogation, and that the redacted videotape may therefore be admitted in evidence at trial without violating defendant’s right against self-incrimination.
CONCLUSION
For all the reasons stated herein, the court holds that the People may not introduce at trial any evidence of defendant’s refusal to take the chemical test, but the People may nevertheless introduce into evidence at trial the videotape of the defendant in the redacted form they have proposed (with the exception that the material identified in footnote 5, supra, must also be deleted). The Assistant District Attorney and defense counsel are directed to alert the Trial Judge at the outset of the trial herein to the need for jury instructions in accordance with this opinion as to the limited use of the videotape and as to the reasons why it has been redacted. Counsel are urged to prepare proposed language for such an instruction for the trial court to consider in advance of the presentation of evidence at trial.

. The Department of Motor Vehicles has promulgated model “refusal” warnings which the Department recommends be used by the police when the police ask a defendant to consent to a chemical test. Those warnings read as follows:
“1. You are under arrest for driving while intoxicated.
“2. A refusal to submit to a chemical test, or any portion thereof, will result in the immediate suspension and subsequent revocation of your license or operating privilege, whether or not you are convicted of the charge for which you were arrested.
“3. If you refuse to submit to a chemical test, or any portion thereof, your refusal can be introduced into evidence against you at any trial, proceeding, or hearing resulting from this arrest.
“4. Will you submit to a chemical test of your (breath/blood/urine) for alcohol? or (will you submit to a chemical analysis of your blood/urine for drugs)?” (NY State Dept of Motor Vehicles, Off of Traffic Safety, Div of Traffic Safety Records, TSLE & D Mem No. 13-85, dated Dec. 11, 1985.)

. Defendant has not presented any such authority or made any further argument on this point. Accordingly, the court adheres to its original ruling and denies the defendant’s Dunaway motion. Based on the arresting officer’s testimony (which the court credits in full), it is clear that there was ample probable cause to arrest the defendant for both of the crimes charged in this case.

. Specifically, the People propose that the videotape be redacted so that all that would remain are those passages where the defendant states in a mixture consisting mostly of Spanish, and some broken English:
“This is the first time I get drunk and everybody gets drunk, we are in Christmas. Yes or no? We are in Christmas, and so what?, we are in Christmas and I, how is it? Tomorrow I start working and today * * *
“What’s wrong with being drunk? What pretty is that girl! You see?
“Look * * * [inaudible] I know that the drunk person * * * [inaudible] Now they are driving me crazy, I am turning nervous, I am nervous, did you hear me? It doesn’t matter if they give me money.
*520 “Don’t be funny. Was I steal ** * * passing the light or I was in bad things * * * [inaudible]. Speeding. Was I driving ‘basado’?
“No, because I was parked, do you understand? Parked, I was parked, I wasn’t driving with a gun on 'me and you arrested me, and I wasn’t [inaudible] you say uh uh uh uh uh, no way, I was parked in the parking”.

. The closest analogous case pointed to by the People is that of People v Raco (168 AD2d 806 [3d Dept 1990], lv denied 77 NY2d 910 [1991]). In Raco, the defendant was arrested for driving while intoxicated and a videotape was made of the defendant’s “booking” process. At trial the court permitted the jury to watch the tape, while giving a limiting instruction directing the jury to consider the tape only as evidence of the defendant’s intoxicated condition. After his conviction defendant appealed and argued that this was improper because, inter alia, his right to counsel had been violated. The Appellate Division rejected defendant’s argument, finding that defendant’s right to counsel had not attached at the time of booking and that most of defendant’s statements were in any event spontaneous declarations not subject to suppression.
Raco (supra) is thus instructive in that it stands for the proposition that a videotape made of the defendant while in police custody can sometimes properly be received as evidence at trial on the issue of intoxication; but the Raco decision has limited precedential value in this case because Raco did not involve the statutory bar to evidence of a refusal created by section 1194 (2) (f).

. There is one exception to the foregoing. In the proposed redacted videotape the defendant exclaims loudly (and with a certain leering gusto) “What [how] pretty is that girl! You see!” Defendant said this while looking at the prerecorded videotape of a woman reciting one of the refusal warnings in Spanish. However, because the refusal warning given by the Spanish-speaking woman has been deleted from the redacted videotape, a juror who watches the redacted videotape cannot understand what defendant is looking at or talking about when he exclaims about the “pretty girl”. Thus, if this passage of the redacted videotape were played for the jury, the result would be to make the defendant seem more disoriented than he truly was, and that would unfairly prejudice the defendant on the issue of intoxication. Accordingly, the People are directed to delete this passage about the “pretty girl” from the redacted videotape prior to trial.

. Limited support for this line of argument might be found in People v Jacquin (71 NY2d 825 [1988]). There the defendant was arrested for driving while intoxicated and was videotaped while performing coordination tests. He later argued that certain questions and answers on the videotape should be suppressed as “custodial interrogation” undertaken without Miranda warnings. The Court of Appeals did not decide this issue because it found that the defendant did not preserve his objection to the specific questions and answers at issue. However, the Court of Appeals did not dismiss the defendant’s contention out of hand and its opinion strongly suggests that the argument would otherwise have been at least colorable.