# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2020 Term**

_____

No. 19-1047

_____

**FILED**
**June 16, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## STATE OF WEST VIRGINIA EX REL. RHONDA L. WADE, MARSHALL COUNTY PROSECUTING ATTORNEY,
Petitioner

V.

## THE HONORABLE DAVID W. HUMMEL, JR., JUDGE OF THE CIRCUIT COURT OF MARSHALL COUNTY; AND H.D.,
Respondents

_____

## PETITION FOR WRIT OF PROHIBITION

## WRIT GRANTED

_____

**Submitted: May 19, 2020**
**Filed: June 16, 2020**

Andrea C. Poling
Eric M. Gordon
Marshall County Prosecuting
Attorney's Office
Moundsville, West Virginia
Attorneys for the Petitioner

Michael B. Baum
Edmond & Baum, PLLC
Wheeling, West Virginia
Attorneys for Respondent H.D.

Brett M. Ferro
Chief Public Defender
Moundsville, West Virginia
Attorney for Amicus Curiae,
Public Defender Corporation for the
Second Judicial Circuit

**JUSTICE JENKINS delivered the Opinion of the Court.**

**CHIEF JUSTICE ARMSTEAD, deeming himself disqualified, did not participate in the decision of this case.**

**JUDGE J.D. BEANE, sitting by temporary assignment.**

**JUSTICE WORKMAN not participating.**

**SYLLABUS BY THE COURT**

1.      "'Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari.'  Syllabus Point 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953)."  Syllabus point 1, *State ex rel. Franklin v. Tatterson*, 241 W. Va. 241, 821 S.E.2d 330 (2018).


2.      "'In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.'  Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199

W. Va. 12, 483 S.E.2d 12 (1996)." Syllabus point 2, *State ex rel. Franklin v. Tatterson*, 241 W. Va. 241, 821 S.E.2d 330 (2018).

3.     "The Fifth Amendment privilege against self-incrimination has been interpreted to provide protection only where incriminating evidence of a testimonial or communicative nature is sought from a witness through the vehicle of state compulsion." Syllabus point 8, *Marano v. Holland*, 179 W. Va. 156, 366 S.E.2d 117 (1988).

4.     A defendant's Fifth Amendment privilege against self-incrimination is not violated by the admission into evidence and/or publication to the jury of an audio/video recording of the defendant's voluntary statement made to law enforcement officers.

**Jenkins, Justice:**

The petitioner in this original jurisdiction case, Rhonda L. Wade ("Ms. Wade"), the Marshall County, West Virginia, Prosecuting Attorney, asks this Court to prohibit the Circuit Court of Marshall County from enforcing a ruling that found an audio/video recording of a voluntary statement made to law enforcement officers by a respondent herein, H.D.,[1] who is the defendant in the underlying criminal proceeding, violated H.D.'s privilege against self-incrimination as guaranteed by the Fifth Amendment to the United States Constitution. The circuit court's ruling was based upon its finding that playing the incriminating recording for the jury was commensurate with compelling H.D. to testify against himself. Ms. Wade argues that, because H.D. was not compelled to give the statement, but did so voluntarily, it is not a violation of his privilege against self-incrimination to allow the State to introduce the audio/video recording into evidence, and/or publish it to the jury, during its case-in-chief. Ms. Wade further asserts that the circuit court's contrary ruling misapplies the Fifth Amendment privilege against self-incrimination. Based upon our review of the parties' arguments, the amicus brief,[2] the

---

[1] Due to the sexual nature of the crime allegedly committed by H.D., and the tender age of his victim at the time of his alleged acts, we follow our long standing practice and use initials to refer to those involved in this case. *See* W. Va. R. App. P. 40(e)(1) (restricting use of personal identifiers in cases involving certain sexual crimes or juveniles). *See, e.g.*, *State ex rel. Harvey v. Yoder*, 239 W. Va. 781, 782 n.2, 806 S.E.2d 437, 438 n.2 (2017); *State v. Potter*, 197 W. Va. 734, 737 n.1, 478 S.E.2d 742, 745 n.1 (1996).

[2] We acknowledge and appreciate the Amicus Curiae brief filed by the Public Defender Corporation for the Second Judicial Circuit of West Virginia, which was filed in support of the respondent, Judge David W. Hummel, Jr.

appendix record, and the relevant authority, we agree with Ms. Wade. Therefore, we grant

the requested writ of prohibition.

# I.

## FACTUAL AND PROCEDURAL HISTORY

These facts, as presented by Ms. Wade, are not refuted by H.D. On

December 12, 2018, H.D. was visited at his home by a Marshall County Deputy Sheriff

who asked if H.D. would be willing to make a statement about allegations that he had

engaged in improper sexual contact with E.D., a child. Later that same day, H.D.

voluntarily arrived at the Marshall County Sheriff's Department, where he was shown to

the interview room and advised that he was not under arrest and was free to leave.

Nevertheless, H.D. was read his *Miranda* rights.[3] He then signed a document stating that

he understood his rights and that he waived all of them. Prior to being interviewed, H.D.

was informed that a video recording of his interview was being made. He was interviewed

by Deputy Doug Sayman and Detective Bear Mobly, both of the Marshall County Sheriff's

---

[3] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The requirement for advising an individual of his/her *Miranda* rights arises only in the context of a custodial interrogation. *See State v. George*, 185 W. Va. 539, 545, 408 S.E.2d 291, 297 (1991) ("It is clear that in this jurisdiction *Miranda* warnings are required only when a suspect has either been formally arrested *or* subjected to custodial interrogation." (quotations and citation omitted)). To the extent that H.D. was not under arrest and was free to leave, it was not necessary for law enforcement officers to advise him of his rights. *See State v. Farley*, 192 W. Va. 247, 255 n.10, 452 S.E.2d 50, 58 n.10 (1994) ("Telling a suspect that he/she is not under arrest and is free to leave usually is sufficient to prevent a finding of custody[.]").

Department. During the course of the interview, H.D. also prepared a two-page, hand-written statement. When the interview concluded, H.D. was permitted to leave.

On December 13, 2018, Deputy Sayman filed a criminal complaint charging H.D. with sexual abuse by a parent, guardian, custodian, or person in a position of trust, and with a misdemeanor charge of contributing to the delinquency of a minor. H.D. waived his right to a preliminary hearing, and, in July 2019, he was indicted by a Marshall County grand jury on two counts: (1) sexual abuse in the first degree; and (2) sexual abuse by a parent, guardian, custodian, or person in a position of trust. The State subsequently filed a motion to dismiss, without prejudice, the charge of sexual abuse in the first degree, which was granted.

In preparation for trial on the remaining count of sexual abuse by a parent, guardian, custodian, or person in a position of trust, the State filed a motion to determine the voluntariness of H.D.'s interview by law enforcement, the audio/video recording of which is the subject of the instant petition, as well as his written statement. During the circuit court's hearing on the motion, the State presented the testimony of Deputy Sayman to authenticate three exhibits: (1) the form signed by H.D. on December 12, 2018, acknowledging and waiving his "*Miranda* Rights"; (2) the two-page, hand-written statement prepared by H.D. on the same date; and (3) an audio/video recording of H.D.'s interview of December 12, 2018, with Deputy Sayman and Detective Mobly. These exhibits were entered into the circuit court's record for purposes of the hearing only. At

the conclusion of the hearing, the circuit court advised the parties that it would review the evidence and then issue an order.

Following the hearing, H.D. filed a motion labeled "Defendant's Fourth Motion in Limine" in which he requested that the circuit court "prohibit the showing and/or listening by the jury [of] any and all portions of the Defendant's audio and video recorded statement, and to prohibit the introduction of the Defendant's written statement at trial." In the motion, H.D. argued that introducing the recorded and written statements would be unduly prejudicial to him because the State will have the opportunity to admit evidence of his statements through the testimony of law enforcement officers, which would make the introduction of the statements themselves "cumulative and superfluous." He additionally argued that the admission into evidence of the recorded and written statements would violate his Fifth Amendment right against self-incrimination. He reasoned that, if this evidence was published to the jury, he would effectively "be compelled to be a witness against himself."

During a pretrial hearing on October 21, 2019, the motion in limine filed by H.D. was addressed. From the bench, the circuit court announced that it found H.D.'s statements were given "willingly, knowingly, voluntarily, without coercion, without duress, and with full knowledge of the consequences." The court explained that, because the statement was voluntary, the law enforcement officers would be permitted to testify about H.D.'s statements. However, the court found that playing the audio/video recording

4

"is a violation of the constitutional right to remain silent." Therefore, the State would be permitted to use the recording only for impeachment purposes if H.D. chose to testify. In its subsequent order, which was entered on October 28, 2019, the circuit court reiterated that both of H.D.'s statements had been voluntarily given. However, the circuit court granted H.D.'s motion in limine with respect to the audio/video recording, among announcing other rulings.[4] The circuit court found that "publishing of the audio/video statement of [the] Defendant to the jury was [sic] in violation of the Defendant's 5th amendment right to not be compelled to give testimony against himself." It is the enforcement of this ruling that the State seeks to prohibit.

## II.

## STANDARD FOR ISSUANCE OF WRIT

In this case, the State seeks to prohibit the circuit court from enforcing the portion of its order of October 28, 2019, that prevents the State from publishing to the jury an audio/video recording of a statement voluntarily given by H.D. With respect to the extraordinary remedy of a writ of prohibition, we have explained that

> "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari." Syllabus Point 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953).

---

[4] The circuit court's order of October 28, 2019, contains multiple rulings. We are asked to prohibit only the ruling granting "Defendant's Fourth Motion in Limine." Accordingly, our decision in this case has no impact on the remainder of the circuit court's order.

5

Syl. pt. 1, *State ex rel. Franklin v. Tatterson*, 241 W. Va. 241, 821 S.E.2d 330 (2018).  We

have set out the following test for determining whether to grant a writ of prohibition where,

as here, the circuit court's ruling is challenged on the basis that the court has exceeded its

legitimate powers:

> "In determining whether to entertain and issue the writ
> of prohibition for cases not involving an absence of jurisdiction
> but only where it is claimed that the lower tribunal exceeded
> its legitimate powers, this Court will examine five factors: (1)
> whether the party seeking the writ has no other adequate
> means, such as direct appeal, to obtain the desired relief; (2)
> whether the petitioner will be damaged or prejudiced in a way
> that is not correctable on appeal; (3) whether the lower
> tribunal's order is clearly erroneous as a matter of law; (4)
> whether the lower tribunal's order is an oft repeated error or
> manifests persistent disregard for either procedural or
> substantive law; and (5) whether the lower tribunal's order
> raises new and important problems or issues of law of first
> impression.  These factors are general guidelines that serve as
> a useful starting point for determining whether a discretionary
> writ of prohibition should issue. Although all five factors need
> not be satisfied, it is clear that the third factor, the existence of
> clear error as a matter of law, should be given substantial
> weight."  Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199
> W. Va. 12, 483 S.E.2d 12 (1996).

Syl. pt. 2, *State ex rel. Franklin v. Tatterson*, 241 W. Va. 241, 821 S.E.2d 330.

Furthermore, because we are reviewing an evidentiary ruling by the circuit court, we note

that "'[a] trial court's evidentiary rulings, as well as its application of the Rules of

Evidence, are subject to review under an abuse of discretion standard.' Syl. Pt. 4, *State v.*

*Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998)."  Syl. pt. 11, *State v. Wasanyi*, 241

W. Va. 220, 821 S.E.2d 1 (2018).  This discretionary standard applies even when the

evidentiary ruling affects constitutional rights.  *See State v. Kaufman*, 227 W. Va. 537,

6

548, 711 S.E.2d 607, 618 (2011) ("It is well settled that a trial court's rulings on the admissibility of evidence, 'including those affecting constitutional rights, are reviewed under an abuse of discretion standard.'" (quoting S*tate v. Marple*, 197 W. Va. 47, 51, 475 S.E.2d 47, 51 (1996))). Guided by these standards, we consider Ms. Wade's petition.

## III.

## DISCUSSION

Succinctly stated, the issue presented in this proceeding in prohibition asks whether a defendant's Fifth Amendment privilege against self-incrimination is violated by the admission into evidence and/or publication to the jury of an audio/video recording of a defendant's voluntary statement made to law enforcement officers.

Ms. Wade argues that the circuit court clearly erred as a matter of law by concluding that the video recording of H.D.'s voluntary statement violated his Fifth Amendment right against self-incrimination and, therefore, could not be played for the jury during the State's case-in-chief. Petitioner Wade contends that this Court's decision in *State v. Harris*, 169 W. Va. 150, 286 S.E.2d 251 (1982), provides the general test for the admissibility of a tape recorded inculpatory statement, and under *Harris*, H.D.'s statement should be admissible during the State's case-in-chief.[5] Ms. Wade additionally asserts that

---

[5] We note that, under Syllabus point 3 of *State v. Harris*, 169 W. Va. 150, 286 S.E.2d 251 (1982),

7

the State has no other means to obtain relief from the circuit court's ruling insofar as "the State has no right of appeal in a criminal case, except as may be conferred by the Constitution or a statute." Syl. pt. 1, in part, *State v. Jones*, 178 W. Va. 627, 363 S.E.2d 513 (1987). H.D. responds that the circuit court did not abuse its discretion in making this evidentiary ruling, and, therefore, the requested writ of prohibition should be denied.

The Fifth Amendment to the Constitution of the United States provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V.[6] This right is often referred to as the "privilege against

---

[t]he general rule is that tape recorded inculpatory statements may be admitted into evidence and played to the jury, if they meet the following criteria: (1) A showing that the recording device was capable of taking testimony; (2) a showing that the operator of the device was competent; (3) an establishment of the authenticity and correctness of the recording; (4) a showing that changes, additions, or deletions have not been made; (5) a showing of the manner of the preservation of the recording; (6) an identification of the speakers; and (7) a showing that the testimony was voluntarily made without any kind of inducement.

This holding pertains to establishing a proper foundation for admitting a recorded statement and allowing it to be played to the jury. Thus, as H.D. points out in his brief, because the only issue presently before this Court is whether the Fifth Amendment privilege against self-incrimination is violated by admitting into evidence a defendant's recorded voluntary statement, *Harris* is not applicable to our resolution of this proceeding.

[6] Similarly, under the West Virginia Constitution "[n]o person shall . . . in any criminal case, be compelled to be a witness against himself[.]" W. Va. Const. art. III, § 5. However, the circuit court's order did not rely on the West Virginia Constitution in finding H.D.'s statement could not be presented to the jury in the State's case-in-chief, and H.D.'s "Fourth Motion In Limine," which sought to exclude his statement on Fifth

8

self-incrimination." *See Quinn v. United States*, 349 U.S. 155, 163, 75 S. Ct. 668, 673, 99 L Ed. 964 (1955) (observing that "in popular parlance and even in legal literature, the term 'Fifth Amendment' in the context of our time is commonly regarded as being synonymous with the privilege against self-incrimination"). "The privilege against self-incrimination 'is an exception to the general principle that the Government has the right to everyone's testimony.'" *Salinas v. Texas*, 570 U.S. 178, 183, 133 S. Ct. 2174, 2179, 186 L. Ed. 2d 376 (2013) (quoting *Garner v. United States*, 424 U.S. 648, 658 n.11, 96 S. Ct. 1178, 1184 n.11, 47 L. Ed. 2d 370 (1976)).

Despite the Fifth Amendment, incriminating statements are admissible if certain conditions have been met. First, the statement must be voluntary. "The Fifth Amendment privilege against self-incrimination has been interpreted to provide protection *only* where incriminating evidence of a testimonial or communicative nature is sought from a witness through the vehicle of state compulsion." Syl. pt. 8, *Marano v. Holland*, 179 W. Va. 156, 366 S.E.2d 117 (1988) (emphasis added).

> As the Supreme Court has phrased it: "[T]he privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature[.]" *Schmerber v. California*, 384 U.S. 757, 761, 86 S. Ct. 1826, 1830, 16 L. Ed. 2d 908, 914 (1966). *See also State v. Grubbs*, 178 W. Va. 811, 364 S.E.2d 824 (1987); *State v. Harman*, 165 W. Va. 494, 270 S.E.2d 146 (1980).

---

Amendment grounds, likewise did not mention the West Virginia Constitution. Accordingly, we address only the Fifth Amendment.

*Id.* at 167, 366 S.E.2d at 128. Additionally, if the statement is given in a custodial setting, *Miranda* warnings must be provided. *See Waldrop v. Thigpen*, 857 F. Supp. 872, 893 (N.D. Ala. 1994) ("A confession is not admissible unless it is both voluntarily given and, if made by one in custody, preceded by the prophylactic warnings set out in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966)."), *aff'd sub nom. Waldrop v. Jones*, 77 F.3d 1308 (11th Cir. 1996).

In this case, the circuit court found that H.D.'s statement was voluntary; thus, under the authorities discussed above, the statement should not be suppressed on Fifth Amendment grounds. However, the circuit court concluded that playing the audio/video recording for the jury would effectively require H.D. to testify, and, therefore, the statement should be suppressed. This reasoning is misplaced. Video recordings have become a common method of documenting statements made during investigations into criminal activities.[7] Numerous courts have allowed videotaped statements to be admitted upon

---

[7] In fact, and contrary to the position taken by H.D., our research has revealed that many defendants have argued, unsuccessfully, that a statement that is not recorded should be deemed inadmissible. *See Hodges v. Bezio*, No. 09-CV-3402 ENV, 2012 WL 607659, at *7 (E.D.N.Y. Feb. 24, 2012) (finding no constitutional violation from failure to videotape interrogation, and observing that "that there is no federal constitutional right to a videotaped interrogation"); *United States v. Beard*, No. CRIM. 05-50026, 2005 WL 3262545, at *4 (E.D. Mich. Nov. 30, 2005) (refusing the defendant's request that the court "find Defendant's statement inadmissible because the statement was not electronically recorded," recognizing that "[t]here is no requirement in the Sixth Circuit that confessions be recorded," and further noting that "most jurisdictions do not hold that unrecorded confessions are presumptively inadmissible"); *State v. Lockhart*, 4 A.3d 1176, 1184 & 1184 n.7 (Conn. 2010) (rejecting defendant's claim that Connecticut Constitution requires police to electronically record custodial interrogations, observing that "[t]he federal Courts

finding that the defendant's Fifth Amendment rights had not been violated at the time the statement was given. *See Commonwealth v. Prater*, 651 N.E.2d 833, 839 (Mass. 1995) (concluding that trial court did not err in admitting videotaped confession, in part, because the defendant had "knowingly and intelligently waived the constitutional rights protected by *Miranda*"); *State v. Goforth*, 881 S.W.2d 256, 261 (Mo. Ct. App. 1994) (affirming trial court's denial of defendant's motion to suppress a videotaped statement where "the trial court found Appellant knowingly and intelligently waived his right against self-incrimination . . . during interrogation"); *People v. Robles*, 691 N.Y.S.2d 697, 706 (Crim. Ct. 1999) (finding admission of videotaped statement made while defendant was in police custody did not violate defendant's right against self-incrimination, even absent *Miranda* warnings, because statements were not the product of interrogation); *State v. Ash*, 611 S.E.2d 855 (N.C. App. 2005) (upholding trial court's denial of motion to suppress videotape of interrogation where defendant failed to clearly and unequivocally assert his right to remain silent during interrogation); *State v. Davidson*, 509 S.W.3d 156 (Tenn. 2016) (holding trial court did not err in denying motion to suppress video recording of defendant's statement to law enforcement officers where totality of the circumstances demonstrated that defendant understood his right to remain silent, among others, and he knowingly and voluntarily relinquished that right).

---

of Appeal that have considered a similar claim have uniformly rejected it," and collecting cases).

11

Courts look to the time a statement was given to determine whether a defendant's Fifth Amendment rights have been violated because "the 'general rule' [is] that a witness must assert the privilege to subsequently benefit from it." *Salinas*, 570 U.S. at 186, 133 S. Ct. at 2181, 186 L. Ed. 2d 376. Applying this rule, the *Salinas* Court found that a "[p]etitioner's Fifth Amendment claim fails because he did not expressly invoke the privilege against self-incrimination *in response to the officer's question*." *Id.* at 181, 133 S. Ct. at 2178, 186 L. Ed. 2d 376 (emphasis added). The Court explained that,

> [i]t has long been settled that the privilege [against self-incrimination] "generally is not self-executing" and that a witness who desires its protection "'must claim it.'" *Minnesota v. Murphy*, 465 U.S. 420, 425, 427, 104 S. Ct. 1136, 79 L.Ed.2d 409 (1984) (quoting *United States v. Monia*, 317 U.S. 424, 427, 63 S. Ct. 409, 87 L. Ed. 376 (1943)).

*Id.* *See also Minnesota v. Murphy*, 465 U.S. 420, 429, 104 S. Ct. 1136, 1143, 79 L. Ed. 2d 409 (1984) (commenting that "[i]f [a witness] asserts the privilege, he 'may not be required to answer a question if there is some rational basis for believing that it will incriminate him, at least without *at that time* being assured that neither it nor its fruits may be used against him' *in a subsequent criminal proceeding. . . .* But if he chooses to answer, his choice is considered to be voluntary since he was free to claim the privilege and would suffer no penalty as the result of his decision to do so." (second emphasis added) (quoting *Maness v. Meyers*, 419 U.S. 449, 473, 95 S. Ct. 584, 598, 42 L. Ed. 2d 574 (1976) (White, J., concurring in the result))); *United States v. Medunjanin*, 752 F.3d 576, 587 (2d Cir. 2014) ("[A] person who wishes to enjoy his constitutional protection against self-incrimination must invoke the privilege–either generally or vis-à-vis a specific question–

12

*at the time he is asked to respond or make a statement.*" (emphasis added)); *State v. Plouffe*, 329 P.3d 1255, 1262 (Mont. 2014) ("Generally, [the] right to be free from compelled self-incrimination must be affirmatively invoked by the person claiming the right *at the time of questioning*; if a person fails to invoke the right then the right will be deemed waived." (emphasis added)).

Based upon the foregoing discussion, we now hold that a defendant's Fifth Amendment privilege against self-incrimination is not violated by the admission into evidence and/or publication to the jury of an audio/video recording of the defendant's voluntary statement made to law enforcement officers.

In this case, H.D. was in a non-custodial setting when he made his incriminating statement. Even though the setting was non-custodial, H.D. nevertheless was advised of his rights, and he affirmatively waived them. The circuit court reviewed this evidence and concluded that H.D.'s statement was, indeed, voluntary. H.D. has not challenged this finding. Because H.D. waived his privilege against self-incrimination and voluntarily provided the incriminating statement, of which an audio/video recording was made, he may not now assert the privilege in his criminal proceeding to avoid the admission into evidence and/or publication to the jury of that recording. The circuit court's ruling to the contrary is clearly erroneous as a matter of law. Furthermore, we agree that, because the State has no right to appeal this issue, it has no other means to obtain relief from the circuit court's ruling. Therefore, we grant the requested writ of prohibition.

## IV.

## CONCLUSION

For the reasons explained in the body of this opinion, we grant the requested writ and prohibit the Circuit Court of Marshall County from enforcing that portion of its order, entered on October 28, 2019, that found the audio/video recording of H.D.'s voluntary statement could not be admitted into evidence and/or published to the jury because it violated H.D.'s privilege against self-incrimination.

Writ Granted.

14