OPINION OF THE COURT
Darrell L. Gavrin, J.
The defendant is charged with Vehicle and Traffic Law § 1192 (3), operating a motor vehicle under the influence of alcohol, Penal Law § 205.30, resisting arrest, and Vehicle and Traffic Law § 1111 (d) (1), disobeying a steady red signal.
The People seek to introduce, and defendant seeks to suppress, the refusal of the defendant to submit to a breathalyzer test. A Dunaway/Mapp refusal hearing was held before this court on March 29, 1995. The People called Police Officer Michael Herbison, the arresting officer, and Police Officer Peter Ferrara from Highway 3. The court finds that the testimony of both officers had the force and flavor of credibility. The defendant did not call any witnesses.
FINDINGS OF FACT
After due consideration of all the credible evidence adduced at the hearing this court finds as follows:
On January 28, 1995, at approximately 3:45 a.m., Police Officer Michael Herbison of the 106th Precinct and his partner Officer Peter Zittell were on routine patrol at the intersection of Crossbay Boulevard and North Conduit Avenue in Queens County when he observed the defendant driving a grey 1986 Cadillac pass through a steady red light. Officer Herbison pulled the vehicle over, and as he approached, the defendant rolled down her window. As Officer Herbison requested the defendant’s license and registration, he noted that she had bloodshot, watery eyes, and he detected the strong smell of alcohol on her breath. The officer further observed that the defendant seemed disoriented, and unaware of her surroundings. The officer requested that the defendant step out of the vehicle, whereupon he also observed that she was unsteady on her feet. At 4:00 a.m., Officer Herbison placed the defendant under arrest. As he was escorting the defendant to the squad car, she became very loud and combative towards the officer.
The defendant was brought to the 112th Precinct Intoxi *257 coted Drivers Testing Unit (IDTU) for purposes of performing chemical testing. At approximately 4:10 a.m., she arrived at the 112th Precinct accompanied by Officer Herbison. She was immediately brought to the basement of the precinct where the breathalyzer testing is performed. Present at the testing site were the arresting officer, Officer Herbison, his partner, Peter Zittell, and Officers Higgins and Ferrara of Highway 3. At no time were Miranda warnings given to the defendant by Officer Herbison.
Officer Peter Ferrara of Highway 3 testified that he was the officer responsible for administering the breathalyzer test to the defendant. Officer Ferrara stated that he has six years of experience with the IDTU, and has conducted 600 such tests at a rate of approximately 30 per month.
The test as administered was videotaped and said tape was offered into evidence by the People, and carefully reviewed by this court. The court notes that the quality of the audio portion of the tape is extremely poor, rendering it almost inaudible and of questionable use as evidence. For this reason, the court relies principally on the visual portion of the tape and the live testimony of Officer Ferrara in determining what transpired during the defendant’s chemical testing. At the outset as seen on the tape, the defendant consented when asked to take the breathalyzer. Because she consented, she was not read full Vehicle and Traffic Law § 1194 refusal warnings by any officer on the videotape. However, as Officer Ferrara attempted to have her blow into the breathalyzer, the defendant laughed, carried on in a whimsical fashion, and stated "No f — ing way”, "I’m not gonna blow in that”, "I’m gonna get my car keys and go home”. At one point during her efforts to take the test, the defendant apparently removed the mouthpiece (pipette) from the breathalyzer and Officer Ferrara had to reset the machine. Officer Ferrara warned the defendant in response to this conduct that "If you don’t blow into the machine you will lose your license”. In response, the defendant laughed, and at 5:15 a.m., Officer Ferrara deemed this behavior by the defendant a refusal. Officer Ferrara testified that the full refusal warnings were given to the defendant after he deemed her to have refused, but were not videotaped.
CONCLUSIONS OF LAW
PROBABLE CAUSE
Probable cause is defined as those circumstances and facts *258 within the officer’s knowledge, based on trustworthy information, which warrant a person of reasonable caution to believe that an offense has been or is being committed. (See, e.g., People v Wharton, 46 NY2d 924 [1979]; People v West, 44 NY2d 656 [1978]; People v Oden, 36 NY2d 382 [1975]; People v Witherspoon, 115 AD2d 572 [2d Dept 1985], appeal dismissed 68 NY2d 805 [1986].)
Probable cause does not require proof beyond a reasonable doubt; it requires information that would lead a person to the conclusion that a crime was or is being committed. (See, People v Crosby, 91 AD2d 20 [2d Dept 1983]; People v Bigelow, 66 NY2d 417 [1985].)
In the case at bar, Officer Herbison observed the defendant pass through a steady red light. The court finds that the stop of her vehicle, based upon this predicate, constitutes legally permissible police action. A police officer may approach and stop a vehicle where the officer has reasonable suspicion that a violation of traffic regulations is involved. (People v Sobotker, 43 NY2d 559 [1978]; People v Ingle, 36 NY2d 413 [1975].) It is clear that the police action herein was not the product of mere whim, caprice or idle curiosity, but was generated in response to a traffic infraction personally observed by Officer Herbison. (People v Ingle, supra, at 420.)
To validate an arrest for driving while intoxicated or impaired, the police officer must have had "reasonable cause” to effectuate the arrest. Reasonable cause for an arrest for driving while under the influence of alcohol may be established through the police officer’s observations of the defendant’s condition and/or utilizing the so-called screening or field sobriety tests to determine whether the person is intoxicated or impaired. (See, Gerstenzang, Handling the DWI Case in New York, § 1.4, at 5 [1987 ed].)
The court finds that based upon his personal observations of the defendant, Officer Herbison had probable cause to effectuate her arrest. Once having stopped defendant’s vehicle, Officer Herbison observed her to have classic indicia of intoxication: bloodshot, watery eyes, the strong smell of alcohol on her breath, the defendant seemed disoriented, and was unsteady on her feet as she exited the vehicle. Accordingly, defendant’s motion to suppress defendant’s refusal based upon a lack of probable cause is denied.
REFUSAL
Vehicle and Traffic Law § 1194 (2) (f) provides: "Evidence of *259 a refusal to submit to such chemical test or any portion thereof shall be admissible in any trial, proceeding or hearing based upon a violation of the provisions of section eleven hundred ninety-two of this article but only upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal. ” (Emphasis added.) (See, People v Thomas, 46 NY2d 100 [1978].) Vehicle and Traffic Law § 1194 therefore requires, before evidence of a refusal may be admitted, that the People meet their initial burden of showing, by a preponderance of the evidence, that the police delivered a "sufficient warning, in clear and unequivocal language, of the effect of such refusal” and that the person persisted in refusing to take the test. (See, e.g., People v Briggs, NYLJ, Jan. 31, 1994, at 29, col 6 [Grim Ct, Bronx County] [Oliver, J.].) The statute patently requires that, if the prosecutor fails to go forward with evidence that the required warning was given in clear or unequivocal language, or that the defendant not only refused, but persisted in refusing to submit to the test, a defendant’s motion to suppress introduction of the refusal into evidence must be granted. (Vehicle and Traffic Law § 1194 [2] [f]; see, e.g., People v Niedzwiecki, 127 Misc 2d 919 [Crim Ct, Queens County 1985].)
In the instant case, the testimony does not establish that the defendant was ever given the entire set of statutorily mandated warnings by any officer as to the effect of her refusal to submit to the breathalyzer examination in "clear and unequivocal language”. According to the testimony of Officer Ferrara, the full warnings were not given to the defendant until after she was deemed to have refused and the videotape was turned off. Officer Ferrara testified that the reason the defendant was not read the full set of warnings before she was asked to take the test was that she initially consented. Officer Ferrara further testified that it is the practice of the Police Department IDTU not to administer all of the warnings unless the person refuses to consent. If this is indeed the current practice of the Police Department, to wit: not to give the warnings when a person initially consents, this court disapproves of such practice, especially in light of situations such as the one at bar where a defendant initially consents and then vacillates or recants her consent.
This court strongly urges a change in the manner in which the warnings are administered by the Police Department *260 IDTU. It is suggested that instead of skipping and therefore omitting the entire set of statutory warnings in cases where the defendant initially consents, it would be better practice to administer all warnings at the outset. This would involve a simple incantation of rights similar to the existing procedure for administering Miranda warnings. It is this court’s opinion that the warnings contained on the Intoxicated Driver Examination Instruction sheet be read in their entirety regardless of whether the defendant initially consents to take the test.
The court herein speculates that the set of facts presented above is not unique. In such situations, where the person vitiates her consent to take the test, and was not initially read the full warnings, it is then incumbent upon the officer conducting the test to warn the defendant at that point on the videotape that her refusal will result in immediate mandatory license suspension, subsequent revocation of her driver’s license, and that evidence of such refusal can be introduced against her at a subsequent trial. This was clearly not done in the case at bar. Before deeming her conduct a refusal, this court opines that Officer Ferrara had an obligation to read the defendant the full refusal warnings in clear and unequivocal language as required by law and on the videotape itself. As Officer Ferrara admitted on cross-examination, it is the obligation of the officer conducting the test to record all important events on the videotape.
The only evidence of any attempt by Officer Ferrara to warn the defendant of the consequences of a refusal, as seen on the videotape, was his statement to her that "If you don’t blow into the machine, you lose your license”. The latter admonition by Officer Ferrara is incomplete and vague, and clearly does not comport with the requirements of Vehicle and Traffic Law § 1194 (2) (f).
Accordingly, the People must be precluded from offering any evidence of the defendant’s alleged refusal. (See, People v Boone, 71 AD2d 859, 860 [2d Dept 1979]; People v Cruz, 134 Misc 2d 115 [Crim Ct, NY County 1986] [Solomon, J.].)
The court need not reach the issue of whether the defendant’s conduct was so contumacious as to justify the officer’s conclusion that it constituted a refusal. However, for the sake of appellate review, the court finds that the defendant’s conduct would, had proper warnings been given, constitute such a refusal. The defendant’s conduct as shown on the videotape, coupled with her physical actions of laughing, and pulling the *261 pipette off the breathalyzer machine, clearly warranted the officer’s conclusion that her conduct constituted a refusal. (See, e.g., Matter of Johnson v Adduci, 198 AD2d 352 [2d Dept 1993].)
However, before an officer may deem conduct a refusal, the prerequisite warnings must be given, and the defendant must persist in her refusal, after being offered at least two opportunities to submit to the chemical test, "at least one of which must take place after being advised of the sanctions for refusal”. (People v Rosado, 158 Misc 2d 50, 51-52 [Crim Ct, Bronx County 1993] [Sonberg, J.].) Since it is apparent that the full warnings were never properly conveyed to the defendant, it cannot be argued that there the defendant’s refusal was persistent. (People v Rosado, supra, at 52.)
Accordingly, whether or not there was a valid basis for concluding that the defendant refused is immaterial, since absent the administration of warnings in unequivocal language, a refusal may not be admitted into evidence. The People have failed to show, by a preponderance of the evidence, that the police delivered a "sufficient warning, in clear and unequivocal language, of the effect of such refusal” and that the defendant persisted in refusing, and, therefore, defendant’s motion to suppress introduction of the refusal into evidence must be granted. (Vehicle and Traffic Law § 1194 [2] [f]; see, e.g., People v Niedzwiecki, supra.)
Based upon the foregoing reasons, defendant’s motion to suppress evidence of the defendant’s alleged refusal at trial is granted. The prosecutor may not comment on such refusal, nor shall there be a charge to the jury on the subject. (See, e.g., People v Martin, 143 Misc 2d 341, 345 [Vil Ct, Village of Newark, Wayne County 1989].)