*159 OPINION OF THE COURT
Ethan Greenberg, J.
The People move to reargue this court’s prior oral decision of February 4, 2005, granting defendant’s motion to preclude evidence of his purported refusal to submit to a drunk driver “breathalyzer” test. The court hereby grants the motion to reargue. For the reasons detailed below, however, the court adheres to its original decision and therefore grants defendant’s motion to preclude.
In brief, preclusion is granted because the hearing evidence did not demonstrate that defendant intentionally refused to take a breathalyzer test for the presence of alcohol in his system. Rather, the evidence showed that defendant tried in good faith to take the test, but failed to complete the test. Defendant failed because he genuinely did not understand that he needed to blow harder and longer into the breathalyzer machine in order for the machine to work.
More generally, pretrial “refusal hearings” have become common in New York criminal practice, and they have presented a wide variety of issues. (See P Gerstenzang and E. Sills, Handling the DWI Case in New York § 41.32 [2004-2005 ed] [collecting authorities for propriety of pretrial refusal hearing].) Yet — as the present motion to reargue demonstrates — the law concerning the scope of such a hearing and the proper allocation of the burden of proof at such a hearing is still not as fully settled and generally well understood as it ought to be. (See People v Lynch, 195 Misc 2d 814 [Crim Ct, Bronx County 2003] [correcting the People’s misunderstandings concerning the nature and scope of a refusal hearing].) This case therefore presents an occasion to limn the proper outlines of a refusal hearing and to restate the nature of the People’s burden.
As detailed below, at a refusal hearing (in addition to addressing any special issues that may arise) the People in essence must meet a two-part burden. First, they must show by a preponderance of the evidence that clear and proper refusal warnings were delivered to the defendant. Second, they must also show by a preponderance of the evidence that a true and persistent refusal then followed.
In the present case, the People foundered on the second point. They were able to show that defendant failed to complete the test; but they were unable to show that defendant intentionally refused it. Defendant’s unintentional failure to complete the *160 test did not constitute a refusal by conduct within the meaning of Vehicle and Traffic Law § 1194 (2) (f), nor did it evidence consciousness of guilt. Accordingly, evidence of his failure will not be admitted at trial.
Facts
At about six o’clock in the morning on March 27, 2004, Police Officers Montafia and Iannone directed defendant Yony Davis to pull his car over because one of Mr. Davis’s brake lights was not working and because the window tint on his car appeared excessively dark. Officer Iannone asked Mr. Davis to step out of his car. Officer Montafia noted that defendant Davis appeared unsteady on his feet and gave off an odor of alcohol. Officer Montafia placed defendant under arrest for driving while intoxicated.
Defendant Davis was taken to the 45th Precinct station house. Highway Officer Whelan came to the 45th Precinct in order to conduct a breathalyzer test for the presence of alcohol in defendant Davis’s system. The breathalyzer procedure was recorded on videotape. The procedure began promptly at about 6:15 a.m. Defendant, Officer Whelan and Officer Montafia were present and appear on the tape; another officer named Salvangio was also present (but out of the camera’s view) and a fourth officer operated the camera. The breathalyzer machine (an Intoxilyzer 5000) was in good working order; it was used both earlier and later that same morning without any mechanical problems.
Defendant Davis speaks Spanish. He also speaks some English, with a very heavy (indeed, almost impenetrable) accent. Officer Whelan played for defendant Davis the first part of the standard driving while intoxicated (DWI) Spanish language videotape in which a woman advises the viewer in Spanish: “You have been arrested for driving a vehicle under the influence of alcohol or drugs. I would like you to take a chemical test of your breath. Do you want to take the test? Yes or No?”
Defendant verbally agreed to take the test. Officer Whelan calibrated the breathalyzer machine and produced a removable mouthpiece. While placing the mouthpiece on the machine, Officer Whelan quickly indicated that defendant was to blow into the machine, and Officer Whelan gave a very brief demonstration by exhaling a short (less than one second) and seemingly light breath into the air.
Defendant blew into the machine, but it did not register a breath sample. Officer Whelan instructed the defendant to blow *161 again. A frustrating series of events followed. Defendant blew into the machine a total of four or five times, but he did not blow long enough or hard enough for the machine to test his breath. Officer Whelan continually instructed defendant to blow again, using various phrases including: “More,” “Mas,” and “More blowing.” In particular, Officer Whelan favored the phrase “Mas.” At one point, Officer Whelan barked the word “Mas” at defendant about 20 times in 20 seconds. Defendant Davis became emotional, teary-eyed and confused. At times he appealed to the other officers present — that is, Officers Montaña and Salvangio and the camera man.[1] They all remained silent. But defendant Davis also kept returning to the machine and blowing into it as requested by Highway Officer Whelan.
Officer Whelan then played the second part of the standard Spanish language DWI videotape for defendant. In that portion of the tape the woman advises the viewer in Spanish,
“If you refuse to submit to the chemical test or any part of the same, it will result in the immediate suspension or revocation of your driver’s license or privileges, whether you are found guilty or not of the charges for which you have been arrested. If you refuse any part of the test that could be used as evidence against you in any process, trial or hearing.”
Defendant Davis again agreed to take the test, and the same frustrating series of events continued. Defendant blew into the machine four or five more times, but the machine did not take in enough breath to be tested. Officer Whelan appeared to grow increasingly frustrated and angry. He repeated the same few *162 phrases over and over (and sometimes bellowed) at the defendant: “Mas,” “More blowing,” “More,” and “Keep blowing.”
There was one brief moment where it appeared that the impasse might be broken when Officer Whelan tried to tell defendant to take deep breaths. Unfortunately, at that moment defendant was busy appealing to the other officers present, and he did not appear to hear Officer Whelan. Thereafter Officer Whelan largely reverted back to repeatedly barking the word “Mas” at the defendant.
Finally, Officer Whelan despaired of making the procedure work. While defendant was talking to the other officers present, Whelan declared that defendant had refused to take the breathalyzer test, and that — due to the language barrier — there would be no attempt to ask the defendant to take coordination tests.
Officers Montafia and Whelan testified to the foregoing, and the tape of the breathalyzer procedure was played at a combined Mapp/Dunaway/Johnson/two-houv rule/refusal hearing held before this court on February 4, 2005. Highway Officer Whelan candidly testified that defendant Davis was indeed breathing into the breathalyzer machine. Officer Whelan explained that the problem had been that Mr. Davis did not blow long enough or hard enough for the machine to test his breath. For that reason, Officer Whelan formed the opinion that defendant was “fake-blowing” and therefore had refused the test. Officer Whelan acknowledged that none of the officers present had attempted to tell defendant either in English or Spanish that defendant needed to blow longer and harder in order to get the breathalyzer machine to work.
At the conclusion of the hearing, the court issued an oral decision. The court found that there was a reasonable basis for the initial stop of defendant’s car, and that there was probable cause for defendant’s arrest. The court further found that the breathalyzer was administered within the required two-hour period, and that proper “refusal” warnings had been delivered to defendant via the Spanish-language videotape. Thus, defendant’s Mapp, Dunaway, Johnson and two-hour rule motions to suppress evidence of his purported refusal were denied (and neither party appears to take issue with these findings in connection with the current motion to reargue).
However, the court further found that the People had not met their burden to demonstrate that a true refusal by conduct had occurred, and therefore precluded any evidence at trial of *163 defendant’s purported “refusal” to take the breathalyzer test. It is that ruling that the People now move to reargue.[2]
Analysis
Refusal Evidence
In a drunk driving prosecution, the Vehicle and Traffic Law expressly permits the People to introduce evidence that defendant refused to take a breathalyzer test (or other chemical test for the presence of alcohol in defendant’s system). Such evidence will be admitted only upon a showing by the People that the defendant persisted in refusing to take the test after being given sufficient warnings, in clear and unequivocal language, of the effect of such refusal. (Vehicle and Traffic Law § 1194 [2] [f].)
By its terms, Vehicle and Traffic Law § 1194 (2) (f) applies to a persistent “refusal” to take the breathalyzer test; it does not apply to a mere “failure” to take or complete the test. The distinction is important. By using the term “refusal,” the Legislature made it plain that the statute is directed only at an intentional or willful refusal to take the breathalyzer test. (See People v Anyakora, 162 Misc 2d 47, 52 [Sup Ct, NY County 1993] [distinguishing between failure and refusal in context of Public Health Law provision], affd 238 AD2d 216 [1st Dept 1997], lv denied 90 NY2d 854 [1997]; People v Patterson, 185 Misc 2d 519, 529 [Grim Ct, Bronx County 2000] [distinguishing between failure and refusal in context of Sex Offender Registration Act].) The statute is not directed at a mere unintentional *164 failure by the defendant to comply with the requirements of the breathalyzer test.
The requirement that defendant’s refusal be intentional grows out of the evidentiary theory underlying the statute. Evidence of a refusal is admissible on the theory that it evinces a defendant’s consciousness of guilt. (People v Thomas, 46 NY2d 100, 108-109 [1978]; People v Ferrara, 158 Misc 2d 671 [Crim Ct, Richmond County 1993].) Obviously, an unintentional failure to complete the test does not evidence consciousness of guilt.
As a general matter, where purported evidence of consciousness of guilt is too remote or speculative to support an inference of consciousness of guilt, or where the probative value of such evidence is slight and clearly outweighed by the danger of undue prejudice, such evidence should be excluded. (People v Basora, 75 NY2d 992, 994-995 [1990]; People v Feldman, 296 NY 127, 137 [1947]; Prince, Richardson on Evidence § 4-611 [Farrell 11th ed].)
Refusal by Conduct
A refusal can consist of a direct verbal refusal to take the breathalyzer test. (See e.g., People v Coludro, 166 Misc 2d 662 [Crim Ct, Kings County 1995]; see also People v Richburg, 287 AD2d 790 [3d Dept 2001], lv denied 97 NY2d 687 [2001] [express refusal to consent to blood test for alcohol].) It can also consist of a refusal by conduct. {See P. Gerstenzang and E. Sills, Handling the DWI Case in New York § 41:27 [2004-2005 ed].) Thus, where a defendant first verbally consents to take the breathalyzer test, but then deliberately acts in such a way as to prevent the breathalyzer machine from working, the defendant will be deemed to have refused by his conduct to take the test.
For example, where a defendant pretends to blow into the machine, but deliberately diverts his breath in order to prevent the machine from registering a reading, he will be deemed to have refused to take the test. (Van Sickle v Melton, 64 AD2d 846 [4th Dept 1978]; Di Girolamo v Melton, 60 AD2d 960 [3d Dept 1978]; People v Kearney, 196 Misc 2d 335 [Sullivan County Ct 2003].) Similarly, where (after being told that his first effort to blow was inadequate) the defendant simply declines altogether to blow into the machine, his conduct constitutes a refusal. (People v Bratcher, 165 AD2d 906 [3d Dept 1990], lv denied 77 NY2d 958 [1991]; see also People v MacDonald, 227 AD2d 672 [3d Dept 1996], affd 89 NY2d 908 [1996] [merely *165 pretending to blow into Alco-Sensor device is admissible evidence of consciousness of guilt].)
The crucial consideration in this regard is whether defendant’s conduct was deliberate. Where a defendant does not consciously intend to evade the breathalyzer test, his mere failure to take or complete the test cannot properly be regarded either as a true “refusal” within the meaning of section 1194 (2) (f) or as evidence of consciousness of guilt. (See People v Massong, 105 AD2d 1154 [4th Dept 1984].)
The instructions given to a defendant by an officer administering the breathalyzer can be significant in evaluating whether that defendant intended to evade the breathalyzer test. Intentional disobedience of clear instructions given by the officer can be an indication that defendant was trying to evade the test; on the other hand, the officer’s failure to give clear directions can mean that defendant failed to complete the test merely because he was confused as to what he was required to do.
Thus, for example, where a defendant disobeyed two express warnings not to place anything in his mouth, and then placed gum in his mouth in order to prevent the breathalyzer from making an accurate reading, his conduct constituted a refusal to take the test. (White v Melton, 60 AD2d 1000 [4th Dept 1978].) On the other hand, where the officer failed to expressly instruct a defendant to refrain from placing any object in his mouth, the defendant was not deemed to have refused to take the test by placing gum in his mouth. (Sullivan v Melton, 71 AD2d 797 [4th Dept 1979]; see also Dykeman v Foschio, 90 AD2d 892 [3d Dept 1982] [disregarding clear instruction not to smoke constitutes a refusal].) Thus “[p]hysical acts of a defendant have been held to be responses equating [to] a refusal to take a breathalyzer exam only if the acts were specifically warned against.” (People v Niedzwiecki, 127 Misc 2d 919, 920 [Grim Ct, Queens County 1985] [citations omitted].)
Defendant Davis Failed, But Did Not Refuse, To Complete Test
It should be noted that the Intoxilyzer 5000 breathalyzer machine used here (and in many other cases) will not usually register a reading when the subject simply breathes into the machine in an ordinary, everyday fashion. The subject must “blow” with some degree of force for a somewhat sustained period of time. (See People v Summa, 140 Misc 2d 763, 765 [Suffolk Dist Ct 1988] [approving the Intoxilyzer 5000 and detailing its workings; also noting that subject “must blow for four *166 seconds at a sufficient pressure to insure that there is no ‘mouth alcohol’ that could be detected by the machine”]; see also People v DeMarasse, 85 NY2d 842, 845 [1995] [explaining operation of Intoxilyzer 5000 and importance of obtaining sample of “deep lung air”].)
In the present case, the highway officer who attempted to administer the Intoxilyzer test candidly testified (and the videotape showed) that the defendant Mr. Davis did in fact breathe directly into the Intoxilyzer 5000 machine each of the many times he was asked to do so. Indeed, the sound of defendant breathing into the Intoxilyzer is audible on the videotape.
Thus, this is not a case where defendant declined to blow into the machine altogether (see Bratcher, supra), or deliberately diverted his breath in order to avoid activating the machine (see Di Girolamo, supra), or merely pretended to blow into the machine (see, MacDonald, supra). Rather, the problem here (as the highway officer also freely conceded) was that defendant did not blow long enough or hard enough for the machine to test his breath.
Based solely on the fact that the machine did not register an adequate breath sample, the officer formed an opinion that defendant was deliberately trying to evade the test. That conclusion was not wholly illogical. In the ordinary case, where (as here) the breathalyzer machine is working properly, and where the machine does not register a breath sample, the usual inference is that defendant is deliberately refusing to breathe into the machine. (See People v Adler, 145 AD2d 943 [4th Dept 1988], lv denied 73 NY2d 919 [1989].)
But this is not the ordinary case for at least two reasons. First, the usual inference that defendant is deliberately trying to frustrate the breathalyzer machine presupposes that defendant has been told and understands that he must blow vigorously for a sustained period of time; that was not true here. Second, in most refusal-by-conduct cases the defendant only pretends to breathe into the breathalyzer machine; but in this case the videotape clearly shows (and the highway officer himself noted) that defendant really was breathing directly into the machine.
Thus, in this unusual case, the officer’s opinion that defendant was trying to evade the test was not warranted by the facts when taken as a whole. The tape makes it apparent that the defendant was trying to comply with the officer’s repeated directions to breathe into the machine. The difficulty was not *167 that Mr. Davis was trying to evade the test or disobey the officer. Rather, the difficulty was that the highway officer (and the other officers present) simply did not tell defendant that he needed to blow longer and harder in order to get the machine to work.
Defendant speaks Spanish. He also speaks some English, with a very heavy accent. The officers in this case did not tell the defendant in English to blow longer and harder. They did not tell defendant in Spanish to blow longer and harder (because they do not speak Spanish). They did not make any real effort to show defendant that they wanted him to blow longer and harder into the machine. Instead, Highway Officer Whelan simply repeated (and often bellowed at defendant) the same two or three phrases over and over: “Mas,” “More,” and “More blowing.”
The tape shows that in response the defendant grew increasingly confused and emotional. He blew over and over into the machine. But he did not understand that he needed to blow longer and harder in order to activate the Intoxilyzer.
In other words, the evidence at the hearing showed that defendant — acting in genuine good faith — tried to take the breathalyzer test, but failed to complete it because he truly did not understand what was required of him. That is not a “refusal” to take the test within the meaning of Vehicle and Traffic Law § 1194 (2) (f); and defendant’s conduct does not evidence consciousness of guilt. It therefore cannot be received as evidence at trial.
The People’s Burden at a “Refusal Hearing”
New York courts have long recognized the need for pretrial hearings on the admissibility of a defendant’s alleged refusal to submit to a chemical test. (See e.g. People v Boone, 71 AD2d 859 [2d Dept 1979] [reversible error to deny without hearing defendant’s motion to bar evidence of alleged refusal]; People v Burtula, 192 Misc 2d 597, 598 [Nassau Dist Ct 2002] [“(w)hether this request is labeled one for ‘suppression’ or for a pretrial determination into the admissibility of evidence, there exists a sufficient body of case law establishing that a defendant is entitled to such a hearing”]; see generally, E Gerstenzang and E. Sills, Handling the DWI Case § 41:32, supra [collecting authorities].)
A pretrial hearing is appropriate because a ruling made during the course of trial barring refusal evidence would have little *168 value to the defendant; once the jury is made aware of such evidence, the jury cannot truly disregard it, despite any curative instructions that might be given. (People v Cruz, 134 Misc 2d 115, 117-118 [Crim Ct, NY County 1986]; People v Walsh, 139 Misc 2d 161 [Nassau Dist Ct 1988].)
“Refusal hearings” have presented a variety of issues, including: whether there existed probable cause justifying the defendant’s initial arrest (see Matter of Obrist v Commissioner of Motor Vehs., 131 Misc 2d 499 [Sup Ct, Onondaga County 1985]; People v Dejac, 187 Misc 2d 287 [Sup Ct, Monroe County 2001]); whether complete refusal warnings were given (People v Pagan, 165 Misc 2d 255 [Crim Ct, Queens County 1995]); and whether the translation of warnings for a non-English speaking defendant was adequate (see People v Niedzwiecki, 127 Misc 2d 919 [Crim Ct, Queens County 1985]).
Perhaps because the practice of conducting pretrial refusal hearings is relatively new, there is still some confusion exhibited from time to time by litigants as to the proper scope of such hearings. (See e.g. People v Lynch, 195 Misc 2d 814 [Crim Ct, Bronx County 2003].)
The People’s motion to reargue here shows that the People do not fully understand the nature of their burden at a pretrial refusal hearing. The People’s motion papers repeatedly and forcefully assert in a variety of ways that the People have met their burden at such a hearing once they show that proper warnings were given and that defendant thereafter failed to give an adequate breath sample. The People contend that, once they make such a showing, preclusion should be denied and it becomes the jury’s responsibility to decide whether a refusal has occurred and what weight should be given to the evidence of that purported refusal.[3] The People further appear to contend that the hearing court has no need or authority to inquire why the defendant failed to give an adequate sample.
The People are mistaken. Vehicle and Traffic Law § 1194 (2) (f), by its plain terms, requires a threshold showing both that proper warnings were given and that a true and persistent refusal then followed:
“(f) Evidence. Evidence of a refusal to submit to such chemical test or any portion thereof shall be *169 admissible in any trial, proceeding or hearing based upon a violation of the provisions of section eleven hundred ninety-two of this article but only upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal.”
Thus, before the People may place evidence of a purported refusal before the jury, the statute expressly requires the People to make a two-part showing: first, that defendant was given proper warnings; and second, that defendant then intentionally refused (and not merely failed) to take the test.
There is nothing in the case law that even suggests that the People need not make the second part of the threshold showing required by statute — namely, that defendant did in truth refuse to take the test — before placing purported refusal evidence before the jury. Nor is there anything in the statute or case law that suggests that the court in a purported refusal case does not retain its traditional power (and obligation) to exclude purported evidence of consciousness of guilt where the inference of a guilty mind is too remote and speculative. {See People v Basora, supra.)
Instead, the law is clear that it is .the People’s burden at a pretrial refusal hearing to show by a preponderance of the evidence both that the warnings were given and that a true and persistent refusal then followed. (See People v Walsh, 139 Misc 2d 161, 163-164 [Nassau Dist Ct 1988] [“the People should assume the burden of demonstrating by a fair preponderance of the evidence . . . that the defendant refused to consent to the test . . .”]; Lynch, 195 Misc 2d at 819; Burtula, 192 Misc 2d at 598; People v Robles, 180 Misc 2d 512, 515-516 [Crim Ct, Bronx County 1999]; People v Camagos, 160 Misc 2d 880, 884 [Crim Ct, Queens County 1993].)
Once that two-part threshold showing is made, then the jury may consider (with the benefit of appropriate instructions from the court) what weight they may wish to give such evidence. But where, as here, the evidence at the pretrial refusal hearing shows only that defendant unintentionally failed (rather than deliberately refused) to complete the test, preclusion should be granted.
Limited Nature of Holding
The court is not imposing (or even suggesting) a requirement that a new and additional litany of warnings or instructions *170 must be given in connection with every breathalyzer refusal. The standardized warnings are clearly more than adequate in the overwhelming majority of cases.
But the court is saying that if — as here — a particular defendant fails to give an adequate breath sample because he is genuinely confused as to how to blow into the breathalyzer machine (and not because he is deliberately trying to evade the test), then that defendant cannot fairly be said to have “refused” the test.
The court is also not saying that the opinion of a police officer administering a breathalyzer test as to whether defendant is deliberately trying to evade the test is unimportant. It is important. The highway officers who administer these tests have extensive experience, and they can usually see what the defendant is doing better than a judge can by reviewing a videotape. The highway officer’s opinion is therefore ordinarily entitled to great weight. (See Matter of Beaver v Appeals Bd. of Admin. Adjudication Bur., State Dept. of Motor Vehs., 68 NY2d 935 [1986].) But it is not necessarily controlling. (See People v Massong, 105 AD2d 1154 [4th Dept 1984] [rejecting officer’s opinion that defendant faked unconsciousness in order to avoid breathalyzer].)
Here, the highway officer came to believe that defendant was only pretending to try to take the breathalyzer exam. However, the tape demonstrates that defendant did genuinely try to blow into the machine over and over again. The defendant’s failure to give an adequate breath sample was the consequence of a combination of several unfortunate circumstances: first, that no Spanish-speaking officer was available to explain to the defendant that he needed to blow harder and for a longer period of time in order to get the breathalyzer to work; second, that defendant was overly emotional (perhaps because he was impaired by alcohol); and third, that the officers present became so frustrated by the situation that they did not think to simply show defendant how to blow properly into the machine. Thus the defendant’s failure to complete the test was the result of an unfortunate and confused situation; it was not the result of deliberate evasion by defendant.
Accordingly, the People failed to meet their burden under Vehicle and Traffic Law § 1194 (2) (f) to demonstrate that a true refusal occurred.
*171 Conclusion
Defendant’s motion to preclude evidence of his purported refusal is granted.

. Defendant spoke chiefly in broken English. It is difficult to make out precisely what he was saying. But it appears that defendant was telling the other officers present that: he had been in the country for 20 years and had never been in trouble; he was not a thief; he wanted to be given a paper to sign; he was a sick man; and he was willing to go to jail.
It is not clear what paper defendant was asking to be given. When defendant asserted that he was a sick man, he made a fluttering gesture with his hand near his heart. At a later point he once again said that he was sick and rummaged through his wallet.
The import of all this is unclear. It may be that defendant was speculating that the breathalyzer machine was not registering his breath because defendant is a diabetic, and defendant wanted to produce some documentation from his wallet of that fact.
In any event, the problem in this case was not defendant’s physical condition. As detailed below, the real problem was the highway officer’s failure to explain to defendant how to blow into the breathalyzer machine.

. Defendant has submitted what is labeled a “Response” to the motion to reargue. In that response, defendant appears to cross-move to uphold the court’s prior oral decision. The cross motion appears superfluous and will be treated as an opposition to the motion to reargue.
Somewhat similarly, defendant has labeled his original motion as one to “suppress” evidence. Whether a motion to bar refusal evidence should be regarded as a “motion to suppress” or should instead be viewed as a motion for a pretrial ruling on the admissibility of evidence is a somewhat academic (indeed, almost metaphysical) question. (See People v Burtula, 192 Misc 2d 597 [Nassau Dist Ct 2002].)
This court’s view is that defendant Davis’s Mapp/Dunaway application to bar “refusal” evidence as the fruit of an illegal arrest is properly regarded as a “suppression” motion made pursuant to GPL 710.20. However, defendant’s closely related application to bar the same evidence on the ground that the People failed to meet their statutory burden under Vehicle and Traffic Law § 1194 (2) (f) (to demonstrate that a true and persistent refusal occurred) is more properly viewed as a motion for a pretrial ruling on the admissibility of evidence.

. For example, the People contend that the “statute and precedent consistently reserve the determination whether or not the defendant refused to submit to a chemical test as a question of fact to be decided by the jury at trial and not in a pretrial suppression hearing.” (Motion to reargue at 11.)