People v Fishbourne (2025 NY Slip Op 50468(U))

[*1]

People v Fishbourne

2025 NY Slip Op 50468(U)

Decided on April 10, 2025

Criminal Court Of The City Of New York, Queens County

Licitra, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through April 11, 2025; it will not be published in the printed Official Reports.

Decided on April 10, 2025
Criminal Court of the City of New York, Queens County

The People of the State of New York

against
Fishbourne, Defendant.

Docket No. CR-030505-23QN

For the People: Melinda Katz, District Attorney of Queens County (by Antony Galvano)
For Mr. Fishbourne: Queens Defenders (by Lena Melillo)

Wanda L. Licitra, J.

On January 14, 2025, this court held a combined Dunaway/Johnson/Refusal hearing.[FN1]
[FN2]
 The following constitutes the court's findings of fact and conclusions of law.
FINDINGS OF FACT
At the hearing, the prosecution called two witnesses, John McGivney and Frank Morales.
I. Testimony of John McGivney
John McGivney is a police lieutenant at the NYPD's Patrol Borough Queens South. He has been assigned to that unit for three years. Before that, he worked at the NYPD's Intelligence Division for six years. He received various trainings in his police career, including a standard training on intoxicated driving, which he took eighteen years ago at the NYPD Police Academy. He has not received any other trainings on DWI cases since. When determining whether someone may be intoxicated, Lieutenant McGivney looks for various symptoms, like slurred speech, unsteadiness, odor of alcohol, watery eyes, or abnormal behavior. He has been involved in about eighteen DWI investigations, and he has also observed drunk people outside of DWI cases in both his personal and professional life.
On October 17, 2023, Lieutenant McGivney was working a tour in the 103rd Precinct in Queens County. During that tour, he switched between administrative and patrol duties. While on patrol, he was with two other police officers, Huseinovic and Turriciano, whom he describes [*2]as "rookies." Lieutenant McGivney was in a marked police vehicle and in uniform.
At approximately 8:00 p.m. that day, Lieutenant McGivney was traveling southbound on Sutphin Avenue, just north of Liberty Avenue, with Officers Huseinovic and Turriciano. While traveling, Lieutenant McGivney observed a silver Mercedes going northbound on Sutphin Avenue with one headlight out. The officers made a U-turn, and they traveled north on Sutphin to follow the car. After observing the Mercedes driving for about a minute—and without losing sight of the vehicle—the lieutenant saw it pull into a parking lot and park in a parking spot. The Mercedes was appropriately parked in the parking spot, and there were two other cars already parked in the spots on either side of the Mercedes. Lieutenant McGivney never observed the Mercedes swerve, speed, cross any lane lines, or excessively brake. The only traffic infraction that Lieutenant McGivney observed was the non-functioning headlight.
The officers drove into the parking lot behind the Mercedes and activated their turret lights. Lieutenant McGivney instructed Officers Huseinovic and Turriciano to approach the car while he stayed back and "ran" the Mercedes' license plate. On cross-examination, Lieutenant McGivney explained what this meant by this: he entered the plate into a database called NYPSIN, which contains information about vehicle license plates. Lieutenant McGivney determined that the plate attached to the Mercedes was not associated with the vehicle and that the Mercedes was unregistered.
The driver of the Mercedes was Mr. Fishbourne. One of the other officers gave Lieutenant McGivney Mr. Fishbourne's driver's license, and the lieutenant "ran" the license, as well. On cross-examination, Lieutenant McGivney again explained what he meant: he entered Mr. Fishbourne's name, date of birth, and unique identifying "client ID" on the license into NYSPIN, which returned Mr. Fishbourne's driving record. From this information, Lieutenant McGivney determined that Mr. Fishbourne's privileges to drive in New York were suspended. The officers asked Mr. Fishbourne to get out of the Mercedes and they informed him that his license was suspended. They arrested him and placed him in the back of their police vehicle. This occurred around 8:10 p.m.
Lieutenant McGivney got into the front of the police vehicle to drive it. From that position, he noticed a strong odor of alcohol coming from Mr. Fishbourne. While the lieutenant had initially believed Mr. Fishbourne was acting loud and belligerent due to his arrest—"which is not unusual," he testified—the smell of alcohol made him think Mr. Fishbourne may be impaired in violation of V.T.L. § 1192. As a result, he directed the officers to take Mr. Fishbourne to the 112th Precinct's Intoxicated Driver Testing Unit ("IDTU").
II. Testimony of Frank Morales
Frank Morales is an NYPD police officer. He has worked at the NYPD as a police officer for almost six years. He was trained at the NYPD Police Academy. There, he was trained on field sobriety testing and the Intoxilyzer 9000, a machine that measures a person's blood alcohol content based upon a breath sample. He is also trained to identify intoxicated persons; specifically, he knows to look for whether a person has bloodshot, watery eyes, or an odor of an alcoholic beverage. Officer Morales has participated in over ten investigations involving intoxicated people.
On October 17, 2023, Officer Morales was working at the NYPD's Highway 3 unit, which covers Queens County. At about 9:00 p.m., he was at the NYPD's IDTU in the 112th [*3]Precinct, where he met Officer Turriciano and Mr. Fishbourne.
Officer Morales observed Mr. Fishbourne for twenty minutes and then offered him a chemical breath test. Mr. Fishbourne refused. Officer Morales responded:
If you refuse to submit [sic] a breath test or any portion thereof, it will result in immediate suspension or subsequent revocation of your driver license or operating privilege for a minimum period of one year whether or not you are found guilty of all charges for which you have been arrested. In addition, your refusal to submit [sic] a test or portion thereof can be introduced as evidence against you in any trial, proceeding, or hearing resulting from the arrest. I ask you again: will you take the breath test?
Mr. Fishbourne agreed to take the test. Officer Morales set the machine up, but when it came time to blow, Mr. Fishbourne did not blow correctly. Officer Morales believes that because Mr. Fishbourne was not blowing sufficient air into the machine, it "timed out." As he explained: "So when you don't blow a certain amount of [air] the machine times out and it goes as a refusal by conduct." Officer Morales can tell whether somebody is sufficiently blowing into the machine because the machine will beep as soon as a breath sample starts going in. After the machine "timed out," Officer Morales deemed the situation a "refusal by conduct."
CONCLUSIONS OF LAW
I. Dunaway/Johnson
At a Dunaway/Johnson hearing, the prosecution bears the burden of production. They must establish that police actions were lawful under constitutional search-and-seizure law. If they do so, the burden then shifts to the defense to prove by a preponderance of the evidence that any police act was unlawful. (See, e.g., People v. Harris, 192 AD3d 151, 157-58 [2d Dep't 2020]). The court must therefore take each police act, analyze whether the prosecutor met their burden of production, and if so, analyze whether the defense met their burden of proof.
The prosecution here met their burden of production to establish that the police acts were lawful, and the defense failed to show otherwise. An automobile stop is lawful if it is based on "probable cause that a driver has committed a traffic infraction." (People v. Hinshaw, 35 NY3d 427, 430 [2020] [internal quotation marks omitted]). It is a traffic infraction to operate a motor vehicle with a non-functioning headlight at 8:00 p.m. on an October night. (See V.T.L. § 375[2]). Thus, the police were entitled to stop Mr. Fishbourne's vehicle. Upon determining from the NYSPIN database that Mr. Fishbourne's driving privileges were suspended, and after having observed him drive, the police were entitled to arrest him. (See V.T.L. § 509[1]; see also People v. Rodriguez, 122 AD2d 895 [2d Dep't 1986]).
II. Refusal
At a pre-trial "Refusal" hearing, the prosecution bears the burden of establishing that an alleged refusal to submit to a chemical test is admissible at trial. (See, e.g., People v. Saquijxol, 81 Misc 3d 1212[A], at *5 [Crim. Ct., Queens County 2023]; People v. Rivera, 81 Misc 3d 1202[A], at *4 [Crim. Ct., Queens County 2023]; People v. Evans, 81 Misc 3d 1216[A], at *8 [Crim. Ct., Queens County 2023]; People v. Harster, 63 Misc 3d 1209[A], at *9 [Crim. Ct., Bronx County 2019] [observing that the prosecution bears "the burden of establishing that a [*4]defendant refused to submit to a chemical test" with the parameters of the statute]).
A refusal to submit to a chemical test is only admissible at trial under certain circumstances. That is because V.T.L. § 1194[2][a] "plac[es] limits on the authority of the police" to administer a chemical breath test without a person's express consent. (People v. Odum, 31 NY3d 344, 349 [2018]). Among other requirements, the police may only administer a test without a person's express consent if they have "reasonable grounds to believe such person to have been operating in violation" of V.T.L. § 1192 and the person "has been placed under arrest for any such violation." (V.T.L. § 1194[2][a][1]). "[R]easonable grounds" is considered synonymous with "probable cause." (See, e.g., People v. Bohacek, 95 AD3d 1592, 1593 [3d Dep't 2012] [discussing "reasonable grounds" as "probable cause"]; People v. Carkner, 213 AD2d 735, 739 [3d Dep't 1995] [same]; People v. Johnson, 83 Misc 3d 1247[A], at *5 [Just. Ct., Chemung County 2024] [same]; People v. Steffens, 10 Misc 3d 1065[A], at *5 [Dist. Ct., Nassau County 2005] [same]; People v. Davis, 8 Misc 3d 158, 168 [Sup. Ct., Bronx County 2005] [same]; Matter of Obrist v. Comm'r of Motor Vehicles, 131 Misc 2d 499, 501 [Sup. Ct., Onondaga County 1985] [same]; Gerstenzang & Sills, Handling the DWI Case in New York § 41:35 [2024] [same]). Where the police have authority to administer a chemical test without a person's express consent, and the person refuses, that refusal may be admissible at trial. (V.T.L. § 1194[2][f]). However, if the police lack this authority, then the person's refusal "does not fall within the parameters of the statute" and "must be suppressed" from trial. (Odum, 31 NY3d at 352).
In this case, the police did not have the authority to administer a chemical breath test without Mr. Fishbourne's express consent, and therefore his alleged refusal is inadmissible at trial. This is because the police did not have "reasonable grounds," or probable cause, to believe that Mr. Fishbourne was operating a vehicle in violation of V.T.L. § 1192.
For determining whether an officer has probable cause that a person violated V.T.L. § 1192, the standard is whether "it is more probable than not that the defendant is actually impaired." (People v. Vandover, 20 NY3d 235, 239 [2012]). Simply establishing that a person drank some unknown quantity of alcohol and then drove a car—without any indication of impairment—does not itself establish probable cause. (See Vandover, 20 NY3d at 237-39; People v. Vandover, 31 Misc 3d 131[A], at *1 [App. Term, 2d Dep't 2011]; see also People v. Cruz, 48 NY2d 419, 426 [1979] ["That is not to say, of course, that every person who drinks before driving violates the law."]). Indeed, an "odor of an alcoholic beverage," "glassy, bloodshot eyes," and "a fatigued demeanor" are "insufficient to establish probable cause for impairment" to "any extent." (Vandover, 31 Misc 3d 131[A], at *1; see also Vandover, 20 NY3d at 237-39). These facts simply establish that the person drank some alcohol before driving a car, which alone, does not establish probable cause that the person is actually impaired. (Cruz, 48 NY2d at 426; Vandover, 20 NY3d at 237). "[T]he Legislature recognized that the average person can consume a certain amount of alcohol without impairing his ability to operate a motor vehicle as he should." (Cruz, 48 NY2d at 426). To constitute probable cause, there must be some sign that the alcohol consumption has "actually impaired" the person's physical or mental coordination. (Vandover, 20 NY3d at 237).
Here, the police observed a person with a non-functioning headlight controlling a vehicle as one would normally and reasonably expect. The vehicle did not commit any traffic infractions indicative of physical or mental impairment, (cf. People v. Freeman, 37 Misc 3d 142[A], at *2 [App. Term, 2d Dep't 2012]), nor did it drive erratically, (cf. People v. Hillman, 71 Misc 3d [*5]127[A], at *2 [App. Term, 2d Dep't 2021]; People v. Mohabir, 77 Misc 3d 1219[A], at *4 [Crim. Ct., Queens County 2023]). To the contrary, the police observed it pull into a parking spot and park between two other cars without issue. When the police observed Mr. Fishbourne outside of his car, they did not observe him to have slurred speech or be unsteady. (Cf. People v. Gullo, 51 Misc 3d 150[A], at *1 [App. Term, 2d Dep't 2016]). Before requesting the chemical breath test, the police never obtained admissions regarding how much, or when, he drank. (See, e.g., People v. Maher, 52 Misc 3d 136[A], at *2 [App. Term, 2d Dep't 2016]). And the police never performed any preliminary sobriety tests. (See People v. Conrad, 75 Misc 3d 1224[A], at *5 [Just. Ct., Monroe County 2022]).
Rather, the record establishes only that Lieutenant McGivney had noticed a strong odor of alcohol and that Mr. Fishbourne was acting "loud" and "belligerent." But these observations alone cannot substantiate probable cause to believe that he violated V.T.L. § 1192—especially when the officer directly observed reasonable and prudent driving. The odor of alcohol indicates that Mr. Fishbourne had drank some unknown quantity of alcohol, but it does not provide insight into his impairment, if any. (See Matter of DeMichele v. Dep't of Motor Vehicles of NY State, 136 AD3d 629, 630-31 [2d Dep't 2016] [in which a "strong odor of alcoholic beverage on the petitioner's breath" did not itself establish probable cause of violating V.T.L. § 1192]; People v. Alberto, 22 Misc 3d 786, 790-91 [Dist. Ct., Suffolk County 2008] ["The trooper's remaining observation of the odor of alcohol on the defendant's breath raised a possibility that the defendant may have consumed alcohol, but was not sufficient, in itself, to provide the trooper with probable cause."]). It is not per se illegal to drink alcohol and drive a car: again, "the Legislature recognized that the average person can consume a certain amount of alcohol without impairing his ability to operate a motor vehicle as he should." (Cruz, 48 NY2d at 426).
The court is left with whether it should conclude that the police reasonably believed that Mr. Fishbourne was probably physically or mentally impaired simply because he was "loud" and "belligerent." There would be a couple of problems with doing this. First, these terms are subjective, conclusory opinions; no underlying observations were elicited explaining what the lieutenant meant by them. This leaves the court with little to adjudicate. If the court were to simply assume that the lieutenant's opinions were drawn from observations consistent with impairment, "then it would simply adopt the subjective assurances of the officer." (See, e.g., People v. Davis, 83 Misc 3d 262, 268 [Crim. Ct., Queens County 2023]). But that is "not appropriate." (Id.). It "is the responsibility of the neutral court, not the police, to determine whether the latter were [objectively] justified in making the serious intrusion that the deprivation of another's liberty constitutes." (People v. Bouton, 50 NY2d 130, 135 [1980]). Second, the lieutenant's testimony does not suggest that Mr. Fishbourne was acting "loud" or "belligerent" in a way that is probably indicative of impairment. While a person's unusual rambling may suggest impairment, (see People v. Crane, 156 AD2d 704 [2d Dep't 1989]), here the lieutenant testified that he initially thought Mr. Fishbourne was acting "loud" and "belligerent" because he was being arrested, "which is not unusual," as he explained. As such, the bare record—containing only these conclusory opinions—does not support a probable inference that Mr. Fishbourne was "loud" or "belligerent" in a way that indicated that he was impaired. After all, "[c]onduct equally compatible with guilt or innocence will not suffice" for probable cause. (Vandover, 20 NY3d at 237; see also People v. DeBour, 40 NY2d 210, 216 [1976] ["We have frequently rejected the notion that behavior which is susceptible of innocent as well as culpable interpretation, will constitute probable cause."]).
The prosecution fails to establish that the police had reasonable grounds to believe that Mr. Fishbourne had violated V.T.L. § 1192. Therefore, V.T.L. § 1194 does not allow his alleged refusal to take a chemical breath test to be admitted at trial.
Any other issues with the alleged refusal are moot and left undecided.
***
In summary: the motion to suppress the alleged refusal to submit to a chemical test is granted. In all other respects, the motions to suppress are denied.
The foregoing constitutes the order and decision of the court.
Dated: April 10, 2025
Queens, NY
Wanda L. Licitra, J.C.C.

Footnotes

Footnote 1: The prosecution concedes that they did not properly disclose that the police recovered a bottle of Hennessy from the vehicle in this case, as required by C.P.L. § 245.20[1]. They agree that they will not introduce evidence of that alleged property at this hearing or at trial. 

Footnote 2: The prosecution withdrew their C.P.L. § 710.30[1][a] notice, so no Huntley hearing was conducted.